## VINCI v. UNITED STATES.

No. 9313.

United States Court of Appeals
District of Columbia.

Argued Nov. 18, 1946.

Decided Jan. 13, 1947.

Mr. William A. Gallagher, of Washington, D. C., for appellant.

Mr. William Hitz, Asst. U. S. Atty., of Washington, D. C., with whom Mr. Edward M. Curran, U. S. Atty. at the time the brief was filed, Mr. Charles B. Murray, and Mr. Sidney S. Sachs, Asst. U. S. Attys., all of Washington, D. C., were on the brief, for appellee.

Before GRONER, Chief Justice, and CLARK and PRETTYMAN, Associate Justices.

PRETTYMAN, Associate Justice.

Appellant was indicted on 12 counts for murder, and on a 13th count for robbery. Eight of the 12 murder counts were abandoned by the prosecutor, and appellant was acquitted on the other four. He was convicted by a jury on the robbery count and appeals from the judgment upon that verdict.

Appellant contends that the trial court erred in saying to the jury that he had admitted being a blackmailer. Appellant's testimony had been that in New York he and one Connors had cooperated in a "shake-down", in which appellant engaged a person in conversation about illegal ration stamps, handing some to him, and then Connors approached, claimed to be an F. B. I. agent, threatened arrest, and accepted money not to pursue the matter further. There is no merit to appellant's point. See D.C.Code 1940, § 22—2305, and Bouvier's Law Dictionary, Rawle's Third Revision, "Blackmail".

■ The next contention is that the trial court erred in saying to the jury that appellant claimed that he had repented and voluntarily withdrawn from a robbery. Appellant says his claim was that he neither knew of nor participated in a robbery, not that he had repented and withdrawn. He complains that the court's statement indicated to the jury that he admitted that there was a robbery. Appellant's testimony was that he and Connors came to Washington on a "shake-down" such as the one above described; that when they met the intended victim, Connors drew a gun, to appellant's great surprise, and compelled appellant to bind the victims (the intended and a chance caller) with rope and tape; that he (appellant) was frightened and left the place; that later he met Connors at the railroad station and accepted, against his will, some of the money which Connors had taken from the victims. Still later he undertook to ascertain for Connors the value of a ring also taken from one of the victims. "Stolen" is the word used by appellant in his testimony with reference to the money, and with reference to the ring he testified, "He [Connors] says, 'I got it off the old man.' " These features of appellant's testimony sufficiently show that his contention is without merit. Although he offered an explanation, his testimony was that a robbery occurred and that he participated in it, both before and after, with an interlude of non-participation.

■ Appellant's next contention is that the trial court erred in failing to charge the jury with respect to attempted extortion. He says that if his testimony showed guilt of anything, it was of attempted extortion and not of robbery. But, according to his testimony, whatever was done was at pistol point. Extortion was involved only in the preliminary intentions and not in any of the actual performance. The only question open upon that testimony was whether appellant had participated willingly in a robbery.[1] No factual basis for an instruction on extortion appears.

■ Appellant contends that the court erred in not directing a verdict of acquittal.

His view is that if his story was true, he had acted under compulsion by Connors, after having intended only an extortion. Nothing is more commonplace than the right of a jury to believe that part of the testimony which it believes to be true and to discard such part as it believes to be false. The jury could believe the account of the actions taken but disbelieve the explanation.

■ ■ Appellant contends that the trial judge indicated to the jury, by gesture, inflection and facial expression, that he did not believe appellant's claim of compulsion by Connors. The record shows that upon conclusion of the charge to the jury, appellant's counsel said, "Your Honor may not have noticed, but when Your Honor spoke of Vinci's testimony concerning his connection with the offense * * * Your Honor smiled in a way that indicated you were not much impressed with his contention, or his story, * * *" The judge said, "I did." Counsel thereupon noted an exception. No complaint is made of the text of the instruction given by the court concerning the pressure from Connors. Earlier the court had told the jury, "The Court is authorized to comment on the facts and on the evidence in order to assist the jury, but the Court's comments on the facts and on the evidence are not binding on you. You need attach to them only such weight as you may deem wise and proper, and if your recollection of the evidence differs from the Court's recollection, then your recollection must prevail. The final decision on the facts is entirely within your province." Appellant insists that the effect of this admonition was lost because it occurred early in the long charge, 13 pages of the transcript before the instruction concerning appellant's claim of compulsion by Connors. The appellee United States says that the court had a right to comment on the evidence and that a gesture, or facial expression, is no more than a comment.

The rule that a federal judge may comment on the evidence in a criminal case is not without limitation. The line has not been defined with precision, and perhaps

---

[1] Having before us only the conviction for robbery, we omit reference to testimony concerning the alleged murders.

is not susceptible of such definition.[2] However, the case at bar does not require us to attempt that task. It is true that gestures and facial expressions may be as potent as spoken words, and that the court cannot do by gesture what it cannot do by words. But the record before us does not show that the trial judge transcended the bounds of propriety, even if they be narrow. Counsel for appellant tells us in his brief that "the Court gesticulated, smiled, and articulated in such a way as to leave but one impression, namely, that while this was the principle of law involved, the jury need not pay any attention to it, because it was at best, amusing in the extreme." On the other hand, counsel for the appellee indicate doubt that the gestures and expression of the judge impressed the jury. They say that his facial expression "possibly" indicated to the jury his view, but that "It is entirely possible that the jury did not get the meaning that the Court admittedly intended to convey and which alert and critical counsel observed." More directly pertinent than the briefs prepared in hindsight, however, is the characterization given the matter at the time by counsel for appellant. That was, as we have noted, that the judge smiled in a way which "indicated" that he was "not much impressed" with appellant's contention, and counsel's objection was prefaced by the statement that "Your Honor may not have noticed". Gestures, inflection and facial expression are not automatically reflected in a reporter's transcript, and an appellate court must rely upon what the record shows. It must assume that whatever description of the incident is recorded, without dispute, at the scene at the time is accurate. What appears here is not enough to cause us to say that the trial court exceeded the permissible bounds of judicial comment.

Affirmed.

---

[2] In Horning v. District of Columbia, 1920, 254 U.S. 135, 41 S.Ct. 53, 55, 65 L.Ed. 185, the Supreme Court, in an opinion by Mr. Justice Holmes, sustained the action of the trial court in telling the jury, "Of course, gentlemen, I cannot tell you in so many words to find defendant guilty, but what I say amounts to that." The Chief Justice, Mr. Justice Day, Mr. Justice Brandeis, and Mr. Justice McReynolds dissented. However, the Court, in Quercia v. United States, 1933, 289 U.S. 466, 53 S.Ct. 698, 77 L. Ed. 1321, in an opinion by Chief Justice Hughes, held that the trial court exceeded the bounds of fair comment in saying that it was a fact that when a witness wiped his hands while testifying he was almost always lying, and that "I think that every single word that man said, except when he agreed with the Government's testimony, was a lie." The Supreme Court said, "It is important that hostile comment of the judge should not render vain the privilege of the accused to testify in his own behalf."

The First Circuit Court of Appeals, in Malaga v. United States, 1932, 57 F.2d 822, 827, held that it was reversible error for the trial court to say that the appellant "On the stand told a string of lies from the minute he started until the time he ended", and that "If you agree with me, you will find this man guilty", although the judge repeatedly told the jury that his comments were not binding upon them. The cases on the point are collected and discussed in the opinion. The Tenth Circuit, in Leslie v. United States, 1930, 43 F.2d 288, 289, held that it was reversible error for the trial judge to say to the jury, "It doesn't seem to me that the brother was telling the truth in the matter", and "It seems to me, gentlemen, that this defendant is guilty of this crime; it seems to me that he has put up a defense here that will not hold water under this evidence."

In Weiderman v. United States, 1926, 10 F.2d 745, 746, the Eighth Circuit held that the statement by the court that "In my judgment, in this case it was a plain case of a man violating the prohibition law * * * by dealing in alcohol" and that certain evidence of the defense "does not appeal to the judgment of this court as being credible" did not transcend the rule. On the other hand, the same court, in Cook v. United States, 1927, 18 F.2d 50, reversed, because it considered the trial court's instruction as amounting to an argument for conviction.

See also Williams v. United States, 9 Cir., 1937, 93 F.2d 685; United States v. Frankel, 2 Cir., 1933, 65 F.2d 285; Strader v. United States, 10 Cir., 1934, 72 F.2d 589.