**LAWSON v. UNITED STATES.**

**TRUMBO v. UNITED STATES.**

Nos. 9872, 9873.

United States Court of Appeals
District of Columbia Circuit.

Argued Feb. 24, 1949.

Decided June 13, 1949.

Messrs. Charles J. Katz, Robert W. Kenny and Ben Margolis, Los Angeles, Cal., of the Bar of the State of California, pro hac vice, by special leave of Court, with whom Messrs. Charles H. Houston and Martin Popper, Washington, D. C., were on the brief, for appellants.

Mr. William Hitz, Washington, D. C., with whom Mr. George Morris Fay, United States Attorney, Washington, D. C., was on the brief, for appellee. Mr. Sidney S. Sachs, Assistant United States Attorney, Washington, D. C., also entered an appearance for appellee.

Mr. Samuel H. Jaffee, Washington, D. C., was on the brief for National Lawyers Guild, as amicus curiae, urging reversal.

Before CLARK and WILBUR K. MILLER, Circuit Judges, and GEORGE C. SWEENEY, District Judge, sitting by designation.

CLARK, Circuit Judge.

John Howard Lawson, appellant in No. 9872, and Dalton Trumbo, appellant in No. 9873, have separately appealed from two separate judgments of the District Court convicting and sentencing them for separate violations of 2 U.S.C.A. § 192,[1] which makes it a misdemeanor to refuse to answer "any question [of a Congressional Committee] pertinent to the question under inquiry." On motion of appellants, the two appeals were consolidated for oral argument before this court and this opinion will dispose of both appeals.

In October of 1947, the Committee on Un-American Activities of the House of Representatives of the United States (hereinafter called "the Committee"), then engaged in investigation of "Communist infiltration of the motion picture industry," scheduled public hearings in Washington, D. C. Pursuant to two validly issued subpoenas, Lawson and Trumbo, both prominent writers in the motion picture industry, appeared before a subcommittee of the Committee consisting of Chairman Thomas and Congressmen McDowell and Vail. Lawson testified on October 27, 1947, and Trumbo's testimony occurred the following day. Both of appellants testified under oath. The single-count indictment against Lawson charged him with refusal to answer a question as to "whether or not he was or had ever been a member of the Communist Party." Trumbo's indictment, in two counts, charges that he refused to answer questions (1) as to "whether or not he was a member of the Screen Writers

1 52 Stat. 942 (1938).

Guild," and (2) as to "whether or not he was or had ever been a member of the Communist Party." At the separate jury trials below neither Lawson nor Trumbo testified in his own behalf. Both trials resulted in convictions and the imposition of the maximum sentence allowed by 2 U.S.C.A. § 192 of one year imprisonment and $1,000. fine. Both Lawson and Trumbo were allowed to remain on bond pending appeal.

Since the majority of the many contentions raised by these appeals are identical as to the separate appellants, such contentions will be discussed once herein and such discussion will be determinative as to each individual appellant. In the few instances, however, where a particular claim is not raised by both, because of the different records on which these appeals are based, separate treatment will be given and will relate only to the appellant who made the claim.

Appellants strongly urge at the outset that they are protected under specified Amendments to the Constitution from being compelled to disclose their private beliefs and associations and thus the questions asked appellants by the subcommittee were improper and the trial judge therefore erred in upholding the subcommittee's inquiry and in allowing a conviction for refusal to answer. Their argument is that the Bill of Rights protects all individuals against being compelled to disclose their private beliefs and associations regardless of what those beliefs and associations may be, that the right of privacy of an individual is absolute, and that an individual may not be punished for remaining silent as to those beliefs and associations. This is not a novel contention. It has been before this and other federal courts several times in recent years with appropriate variations to fit the facts of the particular case. It was raised in very similar form in Barsky et al. v. United States, 1948, 83 U.S.App.D.C. 127, 167 F.2d 241.[2] The following excerpts

from the opinion of the majority of this court in the Barsky case reveal that this court there expressly decided contrary to the contention raised once more by the present appellants.

"We think that even if the inquiry here had been such as to elicit the answer that the witness was a believer in Communism or a member of the Communist Party, Congress had power to make the inquiry.

\* \* \* \* \* \*

"We are considering a specific question only, which is whether this Congressional Committee may inquire whether an individual is or is not a believer in Communism or a member of the Communist Party.

\* \* \* \* \* \*

*"We hold that* in view of the representations to the Congress as to the nature, purposes and program of Communism and the Communist Party, and in view of the legislation proposed, pending and possible in respect to or premised upon that subject, and in view of the involvement of that subject in the foreign policy of the Government, *Congress has power to make an inquiry of an individual which may elicit the answer that the witness is a believer in Communism or a member of the Communist Party."* [3] (Emphasis added.)

However, appellants here say that the above-quoted language of the majority opinion in the Barsky case was mere *obiter dicta*. We do not agree with this assertion which is obviously designed to erode and undermine the doctrine of the Barsky decision. The courts of the land have many times defined the terms *"obiter dicta"* and *"dicta"* as "language unnecessary to a decision," "ruling on an issue not raised," or "opinion of a judge which does not embody the resolution or determination of the court, and made without argument or full consideration of the point." [4] None of these commonly quoted definitions of *dicta* has any application to the above-quoted passages from the Barsky majority opinion.

---

[2] Certiorari denied, June 14, 1948, 334 U.S. 843, 68 S.Ct. 1511, 92 L.Ed. 1767, petition for rehearing currently pending.

[3] 83 U.S.App.D.C. 127, 167 F.2d at pages 244, 248-249, and 250.

[4] For general discussions of the meaning and applicability of the terms see 14 Am.Jur., Courts § 83; 21 C.J.S., Courts, § 190; and 12 Words and Phrases, Perm. Ed., 379.

In that case, Barsky was subpoenaed by the Committee to produce certain records of the Joint Anti-Fascist Refugee Committee, of which he was Executive Secretary. He appeared but refused to produce the documents subpoenaed. Having been indicted, along with others, for that wilful failure, one of his major defenses, if not the principal one, was that the Congressional Committee lacked the power to inquire because the inquiry might disclose that Barsky and the others were believers in Communism or members of the Communist Party and that they thereby would be subjected to "exposure" of their assertedly private political beliefs in violation of the First Amendment. This was a material issue, squarely raised as justification. for the offense charged in the Barsky case. The point was extensively briefed and strenuously argued before this court in the Barsky case. It received the full consideration of all the judges sitting in that case.[5] The above-quoted portions of the majority opinion in the Barsky case are, therefore, the holding in that case and not in any sense *dicta*. That holding is controlling here in deciding appellants' foremost contention in these appeals against these appellants. We hereby reaffirm the holding of the majority opinion of this court in the Barsky case and adopt its reasoning as applicable to appellants in the present cases. So that there may be no mistake or misunderstanding and because the point here involved has proven to be one of constant recurrence, we expressly hold herein that the House Committee on Un-American Activities, or a properly appointed subcommittee thereof, has the *power* to inquire whether a witness subpoenaed by it is or is not a member of the Communist Party or a believer in Communism and that this power carries with it necessarily the power to effect criminal punishment for failure or refusal to answer that question under 2 U.S.C.A. § 192. This is equally true of the inquiry whether appellants were members of the Screen Writers' Guild, a question which only Trumbo refused to answer. To hold otherwise would indeed be holding that the power to inquire is a "powerless power."

◼ We think it appropriate to quote with approval here the following language of the majority of a three-judge statutory court sitting in this jurisdiction. "It is fully established by reiterated holdings of the Supreme Court that the right of free speech is not absolute but must yield to national interests justifiably thought to be of larger importance. The same is true of the right to remain silent. When legislating to avert what it believes to be a threat of substantive evil to national welfare, Congress may abridge either freedom. The right to be silent may be interfered with in either of two ways: as an incident to the accomplishment of a legislative purpose, Congress may require an individual to make a statement specifically prescribed by it; or it may require generally that an individual make any statement essential to avert the anticipated evil, without defining the statement." [6]

◼ Lawson and Trumbo make various other attacks on the authority of the Committee, the pertinency of the questions asked and the failure to provide immunity for persons who answer the questions. We do not discuss these contentions in detail for they have all been raised and decided adversely to appellants in the prior opinions of this and other federal courts. All of these claims raise constitutional questions decided by the Barsky case, *supra*, the case of United States v. Josephson,[7] the case of Eisler v. United States,[8] and the case of Dennis v. United States.[9] The

---

[5] The dissenting opinion in the Barsky case, while in vigorous disagreement with the majority, shows clearly that full consideration of this issue was given by all.

[6] National Maritime Union of America et al v. Herzog et al., D.C.1948, 78 F. Supp. 146, 165, affirmed 1948, 334 U.S. 854, 68 S.Ct. 1529, 92 L.Ed. 1776.

[7] 2 Cir., 1947, 165 F.2d 82, certiorari denied, 333 U.S. 838, 68 S.Ct. 609, 92 L.Ed. 1122 (1948), rehearing denied, 333 U.S. 858, 68 S.Ct. 731, 92 L.Ed. 1138 (1948).

[8] 1948, 83 U.S.App.D.C. 315, 170 F.2d 273, certiorari granted 1948, 335 U.S. 857, 69 S.Ct. 130 (1948).

[9] 1948, 84 U.S.App.D.C. 31, 171 F.2d 986, pet. for cert. granted, 69 S.Ct. 1527.

combined rationale of these recent decisions as to this very Committee leave it no longer subject to the slightest doubt that the Committee was and is constitutionally created, that it functions under valid statute and resolution which have repeatedly and without exception been upheld as constitutional, that the "question under inquiry" by the Committee was proper; that the power of inquiry includes power to require a witness before the Committee to disclose whether or not he is a Communist, and that failure or refusal of a witness so to disclose is properly punishable under 2 U.S.C.A. § 192. To this we need only add that these particular cases offer the best possible application of the principles of law restated above. No one can doubt in these chaotic times that the destiny of all nations hangs in balance in the current ideological struggle between communistic-thinking and democratic-thinking peoples of the world. Neither Congress nor any court is required to disregard the impact of world events, however impartially or dispassionately they view them. It is equally beyond dispute that the motion picture industry plays a critically prominent role in the molding of public opinion and that motion pictures are, or are capable of being, a potent medium of propaganda dissemination which may influence the minds of millions of American people. This being so, it is absurd to argue, as these appellants do, that questions asked men who, by their authorship of the scripts, vitally influence the ultimate production of motion pictures seen by millions, which questions require disclosure of whether or not they are or ever have been Communists, are not pertinent questions. Indeed, it is hard to envisage how there could be any more pertinent question in these circumstances where the Committee was then investigating, pursuant to statutory authorization, "the extent, character, and objects of un-American propaganda activities in the United States," and "the diffusion within the United States of subversive and un-American propaganda that is instigated from foreign countries or of a domestic origin and attacks the principle of the form of government as guaranteed by our Constitution," [10] and where, as was said in the Barsky case, Communistic ideology "is antithetical to the principles which underlie the form of government incorporated in the Federal Constitution and guaranteed by it to the States." [11]

The remainder of appellants' assignments of error relate to the validity of their respective jury trials. Both Lawson and Trumbo attack the respective charges to the jury in each case as being erroneous, vague and misleading. We do not agree. We have examined both charges in both cases and find in them nothing erroneous, but rather plain, simple statements and definitions clearly intelligible to the minds of ordinary laymen. In the Lawson case appellant says that the judge's comments on the evidence were prejudicial. The remark complained of chiefly was as follows: "There is nothing in the record to indicate that he was trying to answer the question. You can refer to the record." Immediately following this comment by the trial judge in the Lawson case, Lawson's own counsel said: "That is correct." It is established that the trial judge in a federal court is allowed considerable discretion in the conduct of the trial.[12] We see nothing in the above-quoted statement of the trial judge which was either prejudicial or in excess of the judge's discretionary powers. Further, far from objecting to the statement at the time, Lawson's counsel expressed agreement with it.

Both appellants assign as error various specified matters relating to alleged improper exclusion and admission of evidence and undue restriction of the right of

---

[10] 60 Stat. 812, 828 (1946).

[11] 167 F.2d at page 247.

[12] Vinci v. United States, 1947, 81 U.S. App.D.C. 386, 159 F.2d 777; Griffin v. United States, 1947, 83 U.S.App.D.C. 20, 164 F.2d 903, Id., 83 U.S.App.D.C. 351, 169 F.2d 961, remanded on other grounds, 1949, 69 S.Ct. 814, rehearing denied 69 S.Ct. 1153; McGuire v. United States, 1948, 84 U.S.App.D.C. 64, 171 F. 2d 136.

cross-examination. We find nothing in either record to support these claims. Appellant Lawson urges upon us that the subcommittee before which Lawson appeared was not a validly constituted one. This claim is foreclosed by the recent opinions of this court in Meyers v. United States,[13] and in Christoffel v. United States.[14]

Both appellants urge that the trial judges who tried their respective cases erred in denying their challenges and motions to dismiss the jury panel. An examination of the record discloses nothing which would indicate that "an impartial jury drawn from a cross-section of the community"[15] was not obtained in each case below. Accordingly the rulings below were correct. Both appellants also assert claims of impropriety in the manner of impanelling the two juries and in denying challenges of Government employees for cause. These matters were conclusively determined against appellants' contentions by the recent cases of Dennis v. United States[16] and Frazier v. United States.[17]

Lawson and Trumbo both urge that the refusal to transfer the trials from the District of Columbia was erroneous. On this point the Dennis case is squarely in point and controlling here. Finally, Lawson urges that it was error for the trial judge in his case to refuse to disqualify himself. Lawson, in his reply brief to this court concedes that the Eisler case, *supra,* is controlling. We reaffirm our pronouncements on this point in the Eisler case and rely on the cases therein cited.

There being no further contentions raised in either case which merit discussion herein, it follows that both judgments appealed from in these cases are

Affirmed.

---

[13] 1948, 84 U.S.App.D.C. 101, 171 F.2d 800, certiorari denied 1949, 336 U.S. 912, 69 S.Ct. 602.

[14] 1948, 84 U.S.App.D.C. 132, 171 F.2d 1004, certiorari granted 69 S.Ct. 745, and argument had before the Supreme Court on April 20, 1949, reversed 69 S.Ct. 1447.

[15] Thiel v. Southern Pacific Co., 1946, 328 U.S. 217, 220, 66 S.Ct. 984, 985, 90 L.Ed. 1181, 166 A.L.R. 1412.

[16] Supra note 9.

[17] 1947, 82 U.S.App.D.C. 332, 163 F.2d 817, affirmed 1948, 335 U.S. 497, 69 S.Ct. 201.