[Civ. No. 17411. Second Dist., Div. One. July 19, 1950.]

RAY H. GARNER et al., Appellants, v. BOARD OF PUBLIC WORKS OF THE CITY OF LOS ANGELES et al., Respondents.

Charles J. Katz for Appellants.

Ray L. Chesebro, City Attorney, Bourke Jones, Assistant City Attorney, George William Adams, A. L. Lawson and Alan G. Campbell, Deputy City Attorneys, for Respondents.

DRAPEAU, J.—The city of Los Angeles adopted an ordinance, in part as follows:

"An Ordinance to effectuate the provisions of Charter Section 432 and otherwise to insure the loyalty of the officers and employees of this City.

"The People of the City of Los Angeles Do Ordain as Follows:

"Section 1. Every person who is hereafter elected or appointed to an office or position in the service of the City of Los Angeles must, before entering upon the duties of his office or position, take and subscribe to the following oath:

"I, ................., do solemnly swear (or affirm) that I will bear true faith and allegiance to the United States of America and the State of California, and will support and defend the Constitution and laws of the United States of America and of the State of California and the laws of the City of Los Angeles against all enemies, foreign and domestic. I further swear (or affirm) that I do not advise, advocate or teach, and have not within the period beginning five (5) years prior to the effective date of the ordinance requiring the making of this oath or affirmation, advised, advocated or taught, the overthrow by force, violence or other unlawful means, of the Government of the United States of America or of the State of California and that I am not now and have not, within said period, been or become a member of or affiliated with any group, society, association, organization or party which advises, advocates or teaches, or has, within said period, advised, advocated or taught, the overthrow by force, violence or other unlawful means of the Government of the United States of America, or of the State of California. I further swear (or affirm) that I will not, while I am in the service of the City of Los Angeles, advise, advocate or teach, or be or become a member of or affiliated with any group, association, society, organization or party which advises, advocates or teaches, or has within said period, advised, advocated or taught, the overthrow by force, violence or other unlawful means, of the Government of the United States of America or of the State of California, that I will well and faithfully discharge the duties of my office or employment in the service of the City of Los Angeles and that I take this whole obligation freely without any mental reservation or purpose of evasion, So Help Me God.

"Sec. 2. Every person who now holds or occupies an office or position in the service of the City of Los Angeles must,

within thirty (30) days after the effective date of this ordinance, or if he be on leave or under suspension for cause from the service of the city at such effective date, within thirty (30) days after his return to such service, take and subscribe to the oath set forth in Section 1 hereof.

"Sec. 3. Every person who is hereafter elected or appointed to an office or position in the service of the City of Los Angeles must, before entering upon the duties of his office or position, execute an affidavit stating whether or not he is or ever was a member of the Communist Party of the United States of America or of the Communist Political Association, and if he is or was such a member, stating the dates when he became, and the periods during which he was, such a member; provided, however, that no additional affidavit shall be required on account of the transfer, demotion or promotion of any person who has once executed an affidavit under this section or under Section 4 hereof.

"Sec. 4. Every person who now holds or occupies an office or position in the service of the City of Los Angeles, must within thirty (30) days after the effective date of this ordinance, or if he be on leave or under suspension for cause from the service of the city at such effective date, within thirty (30) days after his return to such service, execute an affidavit stating the facts required to be stated in the affidavit required by Section 3 of this ordinance."

Seventeen employees of the city refused to comply with the ordinance, and were discharged. They filed in the superior court their consolidated petitions for writ of mandate directing reinstatement and payment of salaries from the date of their discharge. The court denied the petition, and petitioners appeal to this court.

The issues involved in this case have been set forth and disposed of in *Steiner* v. *Darby* (1948), 88 Cal.App.2d 481 [199 P.2d 429]. (Hearing denied by the Supreme Court, Jan. 10, 1949.)

No good purpose would be served in repeating the reasoning so clearly and logically stated by Mr. Justice McComb in the Steiner case. In that case the law as developed to its date of decision is stated and applied.

Since then, so far as brought to our attention, the principles here involved have been before the courts in the following cases:

*Lawson* v. *United States*, 176 F.2d 49.

In that case the United States Court of Appeals for the District of Columbia Circuit held that questions by a Congressional Committee to script writers for motion pictures whether they were or were not Communists were pertinent and proper; therefore contumacious witnesses were not protected by the Bill of Rights from answering.

*L'Hommedieu* v. *Board of Regents of University of State of New York,* 276 App.Div. 494 [95 N.Y.S.2d 443].

In that case the Supreme Court, Appellate Division, Third Department, of the State of New York held that a statute which provides for dismissal from the public school system of members of subversive organizations does not violate due process of law, nor does it infringe upon the freedoms of speech, press, or assembly.

In that case it is said:

"There is no constitutional right to be a teacher any more than there is to be a public official or a member of any of the professions. No one has a constitutional right to advocate the overthrow of the government by force and violence. The courts have held time and time again that the freedoms guaranteed by the Constitution are not absolute but must yield to the public welfare. (Page 451 [95 N.Y.S.2d].) . . .

"The most important qualification of a teacher is loyalty to our government. It necessarily follows that disqualification is advocacy of the overthrow of that government. The statute under review is a law dealing with public employment of teachers in our public schools. To avail oneself of the privilege of teaching certain qualifications must be possessed, certain rights renounced. This is not an unconstitutional classification. (Citing cases.)

"When it comes to loyalty to our government, the affirmation of loyalty, the denial of disloyalty, renunciation of membership in organizations advocating overthrow of our government or subscribing to subversive tenets, all have been upheld as qualifications of public employment or of holding office in organizations availing themselves of statutory privileges. (Citing cases.) (Pages 452-453 [95 N.Y.S.2d].) . . .

" 'The Constitution,' said the United States Supreme Court in *U. S. ex rel. Milwaukee Social Democratic Pub. Co.* v. *Burleson,* 255 U.S. 407, 414, 41 S.Ct. 352, 355, 65 L.Ed 704, 'was adopted to preserve our government, not to serve as a protecting screen for those who, while claiming its privileges, seek to destroy it.' A contemporary statement of the same principle is found in *Barsky* v. *United States,* 83 U.S.App.D.C. 127,

167 F.2d 241; certiorari denied 334 U.S. 843, 68 S.Ct. 1511, 92 L.Ed. 1767."

*American Communications Assn.* v. *Douds,* 339 U.S. 382 [70 S.Ct. 674, 94 L.Ed. 925].

In that case, decided May 8, 1950, the United States Supreme Court upheld the constitutionality of subsection 9(h) of the Labor Management Relations Act of June 23, 1947. (29 U.S.C.A. § 159(h).) This section denies labor unions the right to present cases to the National Labor Relations Board unless there is on file with the Board" . . . an affidavit executed contemporaneously or within the preceding twelvemonth period by each officer of such labor organization and the officers of any national or international labor organization of which it is an affiliate or constituent unit that he is not a member of the Communist Party or affiliated with such party, and that he does not believe in, and is not a member of or supports any organization that believes in or teaches, the overthrow of the United States Government by force or by any illegal or unconstitutional methods."

The following comments by the court are applicable to the case at bar:

". . . If accidents of birth and ancestry under some circumstances justify an inference concerning future conduct, it can hardly be doubted that voluntary affiliations and beliefs justify a similar inference when drawn by the legislature on the basis of its investigations. (Page 940 [94 L.Ed.].)

". . . The exercise of particular First Amendment rights may fly in the face of the public interest in . . . Government's obligation to provide an efficient public service. . . . (Page 943 [94 L.Ed.].) . . .

"We have previously had occasion to consider other statutes and regulations in which the interests involved were, in large measure, like those now being considered. In *United Public Workers* v. *Mitchell,* 330 U.S. 75, 91 L.Ed. 754, 76 S.Ct. 556, *supra,* we upheld a statute which provided that employees of the Federal Government could not participate in partisan political activities, concededly a First Amendment right, if they would retain their positions. The decision was not put upon the ground that government employment is a privilege to be conferred or withheld at will. For it was recognized that Congress may not 'enact a regulation providing that no Republican, Jew or Negro shall be appointed to federal office, or that no federal employee shall attend Mass or take active part in missionary work.' 330 US at 100. But the rational

connection between the prohibitions of the statute and its objects, the limited scope of the abridgment of First Amendment rights, and the large public interest in the efficiency of government service, which Congress had found necessitated the statute, led us to the conclusion that the statute may stand consistently with the First Amendment.'' (Page 947 [94 L.Ed.].)

In the present case petitioners fail to understand that loyalty is indispensably necessary in the employer-employee relationship between the state and its servants. It is treasonable to advocate the destruction by force of the government for which one works. It is an ever-present threat to government itself to have treasonable persons charged with the conduct of public affairs. Having such people on the payroll results in impairment of governmental service. In times of national stress it would seriously affect the functioning of government. It is, therefore, the duty of those charged with the management of the business of government to ascertain, require, and insure unconditional, unswerving loyalty of every servant of the people, high or low.

One of the foundation stones of private business is that the employee must be loyal to his employer. Loyalty is implicit in the contract of hiring. No private business can long succeed without the conscientious, undivided support of its employees. The man or woman who denies allegiance to his employment is, and should be, soon separated from it. Nemesis with a club waits for him around the corner. And, so long as the employment continues, every employer has the right at any time to ask his employee to declare his loyalty.

''But,'' say some of the petitioners, ''we're loyal. We will take the oath to defend and support the Constitution of the United States and of the State of California. What we object to is that we are required, under oath, to express our beliefs; it inquires into our thinking today, our thinking tomorrow.''

A paragraph from a letter of one of the petitioners reads as follows:

''It violates the right of every individual to free political association, singling out the Communist Party and saying, in effect, that no city worker has a right to belong to it. Not that it says so specifically. But every worker who signs the oath and affidavit knows by the mere juxte position (sic) of the three questions, *Loyalty, Force-and-violence, Communist Party*, that membership in the latter is considered evidence of disloyalty and shows the desire to overthrow the government

by force and violence 'or other unlawful means.' Actually, according to Supreme Court decision, the Communist Party is a legally constituted party entitled to all the electoral privileges accorded any other legal party. My employer, the City of Los Angeles, has no right to ask me whether or not I belong to the Communist, the Republican, the Democratic, or the Prohibition Party. My party affiliations, according to the Constitution of the United States, are strictly my own affair.''

It is an interesting question whether the legislative power may require disclosure or disavowal of mere beliefs or opinions, without overt acts. The argument may be followed extensively in the dissenting and concurring opinion of Mr. Justice Jackson in *American Communications Assn.* v. *Douds, supra.*

That question is not present in this case. The ordinance under consideration does not call for beliefs. It provides that one must aver whether or not he is or ever was a member of the Communist party or the Communist Political Association; that he has not within five years advocated the overthrow of the government by force, violence, or unlawful means; that he is not and has not been a member of any group, society, association, organization, or party which advises or teaches overthrow of the government by such means; and that while he is in the service of the city he will not belong to or become a member of any such group, or advocate or teach such subversive doctrines.

The right of the people of the State of California to have their employees declare their allegiance to the state, that they are not its enemies, and do not advocate or believe in destroying the state by force, violence or unlawful means, is not trammeled, infringed, or denied by any constitutional provision, by natural justice, or by common sense. The ordinance before this court, adopted by a subdivision of state government, is well within the legislative power, and a timely and proper exercise thereof.

The order is affirmed.

White, P. J., and Doran, J., concurred.

A petition for a rehearing was denied August 8, 1950, and appellants' petition for a hearing by the Supreme Court was denied September 13, 1950. Gibson, C. J., Carter, J., and Traynor, J., voted for a hearing.