**In re William Ludwig ULLMAN.**

United States District Court,
S. D. New York.
Jan. 31, 1955.

618

J. Edward Lumbard, U. S. Atty., New York City, for United States of America, L. E. Broome, B. Franklin Taylor, John H. Davitt, Sp. Assts. to the Atty. Gen., Washington D. C., of counsel.

Nathan Witt, and Leonard B. Boudin, New York City, for respondent.

WEINFELD, District Judge.

This is the first proceeding involving the immunity statute passed at the last session of the Congress.[1] The United States Attorney has presented to this Court an application for an order directing William Ludwig Ullman to answer before a grand jury questions which he has heretofore refused to answer, upon the assertion of his privilege against self-incrimination under the Fifth Amendment to the Constitution of the United States. The application sets forth that the grand jury was inquiring into matters involving interference with and endangering of the national security and defense of the United States by espionage and conspiracy to commit espionage in time of war in the Southern

---

1. Public Law 600, 83rd Cong., 68 Stat. 745, 18 U.S.C. § 3486.

District of New York and elsewhere. The petition further avers that in the judgment of the United States Attorney the testimony of the aforesaid William Ludwig Ullman is necessary in the public interest and that the application is made with the approval of the Attorney General, whose letter of approval is attached.

The statute in question provides a procedure in investigations and cases involving the national defense or security whereby a witness, having asserted his constitutional privilege against self-incrimination, may be compelled to testify in return for immunity from future prosecution as to any matter concerning which his testimony is so compelled. The act provides for a grant of immunity in two separate and distinct categories, one, in investigations before the Congress or its authorized committees and the other, in any proceeding or case before grand juries or courts of the United States. We are here concerned only with that part of the statute relating to witnesses before grand juries and courts. So far as pertinent, the statute provides:

> " * * * (c) Whenever in the judgment of a United States attorney the testimony of any witness, or the production of books, papers, or other evidence by any witness, in any case or proceeding before any grand jury or court of the United States involving any interference with or endangering of, or any plans or attempts to interfere with or endanger, the national security or defense of the United States by treason, sabotage, espionage, sedition, seditious conspiracy, violations of chapter 115 of title 18 of the United States Code, violations of the Internal Security Act of 1950 (64 Stat. 987), violations of the Atomic Energy Act of 1946 (60 Stat. 755), as amended, violations of sections 212(a) (27), (28), (29) or 241(a) (6), (7) or 313(a) of the

Immigration and Nationality Act (66 Stat. 182–186; 204–206; 240–241), and conspiracies involving any of the foregoing, is necessary to the public interest, he, upon the approval of the Attorney General, shall make application to the court that the witness shall be instructed to testify or produce evidence subject to the provisions of this section, and upon order of the court such witness shall not be excused from testifying or from producing books, papers, or other evidence on the ground that the testimony or evidence required of him may tend to incriminate him or subject him to a penalty or forfeiture. But no such witness shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he is compelled, after having claimed his privilege against self-incrimination, to testify or produce evidence, nor shall testimony so compelled be used as evidence in any criminal proceeding (except prosecution described in subsection (d) hereof) against him in any court." [2]

The witness opposes the application upon various grounds. He urges that (1) the statute is unconstitutional and in contravention of his rights under the Fifth Amendment by requiring him "to be a witness against himself"; (2) the statute is invalid in that the grant of immunity is not sufficiently protective to compensate for his privilege against self-incrimination; (3) assuming arguendo the statute does grant full immunity, it is invalid in that the court is called upon to perform a non-judicial function; (4) further, assuming it is valid, the application fails to set forth facts establishing that it is in the public interest to grant immunity; (5) certain of the questions as to which the application is made are improper even under a valid immunity statute.

---

2. 18 U.S.C. § 3486(c).

■ With respect to the first ground, the witness recognizing that the power of Congress to enact immunity statutes has been upheld in and since Brown v. Walker,[3] cites the dissenting opinions in that case and urges reconsideration in the light of the punitive sanctions and the social and economic consequences which follow self-exposure under a grant of immunity. The nub of his position is that the constitutional privilege against self-incrimination cannot be met by a statutory substitute no matter how broad the immunity. If Brown v. Walker is to be reconsidered and overruled, obviously that is to be done by the Supreme Court and not the District Court. In passing it may be noted that as recently as Smith v. United States similar objections were advanced before the Supreme Court and rejected.[4] Moreover, immunity statutes have been before the Supreme Court in seven cases subsequent to Brown v. Walker.[5] Its authority remains unimpaired and its principle is firmly imbedded in our constitutional law.

■ Immunity statutes have a long history as a means of forcing out evidence necessary to law enforcement which absent such legislation cannot be compelled where a witness asserts his privilege against self-incrimination.[6] The constitutional elements necessary to the validity of an immunity statute are clear. While Congress has the power to enact legislation to compel a witness to answer incriminating questions upon a grant of immunity, the immunity tendered must provide a full and complete substitute for the privilege against self-incrimination.[7] *The constitutional equivalent of the privilege must be absolute immunity from prosecution for any criminal offense arising out of the compelled testimony.*[8] The witness urges that the present statute is invalid in failing to meet these tests. Thus a basic question is whether the protection

3. 161 U.S. 591, 16 S.Ct. 644, 40 L.Ed. 819.

4. 1949, 337 U.S. 137, 147, 69 S.Ct. 1000, 93 L.Ed. 1264.

5. In Jack v. State of Kansas, 1905, 199 U.S. 372, 26 S.Ct. 73, 50 L.Ed. 234, the Court held that possible incrimination under federal law was no objection to a state immunity statute.

In Heike v. United States, 1913, 227 U.S. 131, 33 S.Ct. 226, 57 L.Ed. 450, the Court held that the immunity did not extend to matters concerning which the witness could have been compelled to testify without an immunity statute, such as the production and identification of corporate records.

United States v. Monia, 1943, 317 U.S. 424, 63 S.Ct. 409, 87 L.Ed. 376, held that under the Act of 1893, 49 U.S.C.A. § 46, a witness acquired immunity simply by virtue of his appearance and testimony in obedience to a subpoena, and that it was not necessary for him to claim his privilege against self-incrimination before answering questions.

Feldman v. United States, 1944, 322 U.S. 487, 64 S.Ct. 1082, 88 L.Ed. 1408, held that the Fifth Amendment does not forbid the use in a federal criminal case of self-incriminating testimony compelled by state authorities under a state immunity statute.

In Shapiro v. United States, 1948, 335 U.S. 1, 68 S.Ct. 1375, 92 L.Ed. 1787, the Court held that no privilege attached to records required to be kept under the emergency price control act, and that a witness did not acquire immunity by appearing in response to a subpoena and testifying as to such records, even though he claimed privilege before answering the questions.

In Smith v. United States, 1949, 337 U.S. 137, 69 S.Ct. 1000, 93 L.Ed. 1264, the Court held that a witness who appeared in response to a subpoena and, after having claimed his privilege, answered all questions asked of him, was immune from prosecution under an indictment involving transactions, matters and things concerning which he testified.

Adams v. State of Maryland, 1954, 347 U.S. 179, 74 S.Ct. 442, 98 L.Ed. 608, held that 18 U.S.C. § 3486, before amendment by the instant act, barred the use in a state prosecution of testimony previously compelled before a congressional committee.

6. See Shapiro v. United States, 335 U.S. 1, 6, footnote 4, 68 S.Ct. 1375, 92 L.Ed. 1787.

7. Counselman v. Hitchcock, 142 U.S. 547, 12 S.Ct. 195, 35 L.Ed. 1110.

8. Brown v. Walker, 161 U.S. 591, 16 S.Ct. 644, 40 L.Ed. 819.

afforded by the statute is coextensive with the constitutional privilege.

The witness' primary contention here is that the statute fails to give complete immunity because it leaves him subject to prosecution for state crime. He argues (1) that Congress is without the constitutional power to bar state prosecutions, and (2) assuming such power, the statute literally read only prohibits the use of testimony in a state prosecution but does not immunize the witness against prosecution in any state court so long as the testimony itself is not used.

■ The short answer to both contentions is Murdock v. United States.[9] There the Supreme Court held that the privilege against self-incrimination could not be invoked before a federal tribunal where the incrimination feared was under state law. If the privilege does not extend to possible crimination under state law and the immunity need only be as broad as the privilege, then it is not an objection to the statute that it does not protect the witness from possible state prosecution.[10] While the Murdock case, whatever objections may be raised to its rule,[11] is a sufficient answer to the witness' contention as long as its authority remains unimpaired, I am of the view that Congress has the constitutional power, certainly with respect to matters touching upon the national defense or security, to provide for a grant of immunity in exchange for compelled testimony which is broad enough to prohibit state prosecutions.

■■ The power to provide for the common defense of the United States is, under the Constitution, expressly granted to the Congress.[12] A "necessary and proper"[13] incident of that power is authority to enact legislation to secure evidence from those allegedly possessing knowledge of actions aimed at undermining the security of the government and to protect it against its enemies, domestic or foreign. By their very nature crimes of subversion, treason, espionage and the like, and conspiracies to commit such crimes, are aimed generally at the federal government representing the totality of the forty-eight states. While such criminal pursuits may also have their impact upon individual states, Congress, since they are matters of paramount national concern, may in passing laws to deal with them conclude the field. Conceding the right of a state, absent federal action, to protect itself against seditious and like activity,[14] if Congress enacting legislation essential to the national defense or security, determines that immunity granted to a witness on the basis of his compelled testimony shall also extend to state prosecutions, it is within its power to do so. Such congressional legislation under the Constitution is then "the supreme Law of the Land" and state interests must yield to the paramount national concern.[15]

■ The immunity provided under the act and the intended corelative bar to state prosecution go no further than necessary to effectuate the legitimate

9. 284 U.S. 141, 52 S.Ct. 63, 76 L.Ed. 210.

10. Feldman v. United States, 322 U.S. 487, 64 S.Ct. 1082, 88 L.Ed. 1408; Jack v. Kansas, 199 U.S. 372, 26 S.Ct. 73, 50 L.Ed. 234.

11. United States v. Marcello, 5 Cir., 196 F.2d 437; United States v. Di Carlo, D. C.N.D.Ohio, 102 F.Supp. 597; see also Ballmann v. Fagin, 200 U.S. 186, 26 S.Ct. 212, 50 L.Ed. 433; United States v. Saline Bank of Virginia, 1 Pet. 100, 7 L.Ed. 69.

12. United States Constitution, Art. I, § 8, cl. 1.

13. United States Constitution, Art. I, § 8, cl. 18.

14. Gilbert v. State of Minnesota, 254 U.S. 325, 41 S.Ct. 125, 65 L.Ed. 287; Gitlow v. People of New York, 268 U.S. 652, 653, 45 S.Ct. 625, 69 L.Ed. 1138. These cases were decided prior to the enactment of the Smith Act, 18 U.S.C. § 2385.

15. United States Constitution, Art. VI, cl. 2; Brown v. Walker, 161 U.S. 591, 606, 16 S.Ct. 644, 40 L.Ed. 819; Hines v. Davidowitz, 312 U.S. 52, 53, 61 S.Ct. 399, 85 L.Ed. 581.

congressional purpose. It cannot be said that the means are not "appropriate" and "plainly adapted to that end".[16] The act does not cover inquiries into all crime. Its stated purpose is to secure evidence of federal crimes effecting the national defense or security by means of an effective grant of immunity. It is specifically restricted to offenses involving treason, sabotage, espionage, sedition, and conspiracy to commit any of the foregoing; it also encompasses violations of the Internal Security Act, 50 U.S.C.A. § 781 et seq., the Atomic Energy Act, 42 U.S.C.A. § 2011 et seq., and the Immigration and Nationality Act, 8 U.S.C.A. § 1101 et seq. Viewed against its objective, the statute is a necessary and proper incident of Congress' power to protect the national interest against the foregoing offenses and hence is "the supreme Law of the Land".

Recently in Adams v. State of Maryland the Supreme Court held that the predecessor section of the present act (former 18 U.S.C. § 3486) prohibited the use in state courts of testimony given before a congressional committee. The State of Maryland which had obtained a conviction against Adams by use of his testimony before a congressional committee, argued that Congress was without power to bar the use of such testimony in state courts. This contention was rejected. The Court also held that former § 3486 was a legitimate exercise of the congressional power "necessary and proper" to carry out its legislative function and was binding upon the states as "the supreme Law of the Land". While the Adams case

only dealt with federal immunity as a bar to the use of testimony in the state courts as distinguished from a bar to state prosecutions, its rationale would seem to apply to both situations.[17] And since the Supreme Court has held that Congress has the power to pre-empt the field of alien registration[18] against a state law requiring alien registration and intended to meet seditious and like activities, it is hard to see why the prosecution of offenses undermining the national defense or security may not also be an exclusively federal concern.

The witness however contends that assuming congressional power exists, the statute fails to grant immunity from state prosecutions. He argues that the phrase "in any court" refers only to the use of evidence but does not bar state prosecution. The language of the present immunity statute is as broad and plain as words can express, and indeed, is more comprehensive than the immunity statute upheld in Brown v. Walker as affording the witness protection coextensive with his privilege. Thus it provides that not only is the witness immune from prosecution with respect to any matter as to which he is forced to testify, but also that the testimony so compelled may not be "used as evidence in any criminal proceeding * * * against him in any court." While it is true that the phrase "in any court" does not appear in the clause barring prosecutions based upon compelled evidence, the language of the clause dealing with prosecutions is by itself broad enough to encompass state as well as federal prosecution.[19] The congressional purpose to extend immunity to state

16. McCullough v. Maryland, 4 Wheat. 316, 421, 4 L.Ed. 579; Adams v. State of Maryland, 347 U.S. 179, 183, 74 S.Ct. 442, 98 L.Ed. 608.

17. The Attorney General asserted that Congress had the power to extend the immunity granted in exchange for testimony to include state court proceedings. Hearings Before Committee on the Judiciary on H.R. 6899, 83rd Cong., 2nd Sess., June 8, 1954, p. 42; Report of Committee of Assn. of the Bar of the

City of New York on Immunity Bills, July 7, 1954, pp. 10–11. Commonwealth v. Nelson, 377 Pa. 58, 104 A.2d 133, certiorari granted sub. nom. Commonwealth of Pennsylvania v. Nelson, 348 U.S. 814, 75 S.Ct. 58.

18. Hines v. Davidowitz, 312 U.S. 52, 53, 61 S.Ct. 399, 85 L.Ed. 58.

19. Cf. Brown v. Walker, 161 U.S. 591, 608, 16 S.Ct. 644, 40 L.Ed. 819.

prosecutions was expressly stated by the House Committee.[20] At the time the Congress passed the bill it was aware of the decision in Adams v. State of Maryland and intended to afford a witness the fullest protection by enlarging the scope of immunity to bar state prosecutions as well as the use of evidence in state courts concerning any matter as to which his testimony has been compelled.

█ The witness next urges that the act is unconstitutional in that it requires the court to perform a non-judicial function. Here he contends that the court is called upon to approve the application for the grant of immunity— in effect to exercise a veto power over the determination of the United States Attorney that the public interest requires that immunity be granted to the witness. Thus he urges that the ultimate determination of whether immunity should be granted to a witness who has asserted his privilege rests with the court, thereby requiring it to exercise a power that is exclusively either legislative or executive; that for the court to make such determination does violence to the separation of powers concept and intrudes the court into matters which call for policy rather than judicial decisions.

In my view it is unnecessary to pass upon the issue of whether or not a power in the court to approve a grant of immunity offends constitutional limitations. Section (c), which we are considering, is clear and unambiguous on its face. It contains no language, either express or implied, which vests discretionary power in the court to uphold or overrule the judgment of the United States Attorney, as approved by the Attorney General, that the testimony of a witness is necessary to the public interest and warrants the grant of immunity to secure it. Indeed a reference to sections (a) and (b) of the act dealing with the method whereby immunity may be granted to witnesses appearing before the Congress or its committees negates the contention advanced by the witness. These sections relating to congressional investigations provide that the testimony of a witness may be compelled upon the assertion of his constitutional privilege when (1) in proceedings before one of the houses of Congress a majority of the members present of that house, or (2) in proceedings before a committee, two-thirds of the full committee have voted for the grant of immunity; (3) and an order of the United States District Court wherein the inquiry is being carried on has been entered requiring the witness to testify or produce evidence.

Significantly, it is further provided "Such an order *may* be issued by a United States district court judge" and that neither House nor any of their Committees shall grant immunity to any witness "without first having notified the Attorney General of the United States of such action and thereafter having secured the *approval* of the United States district court for the district wherein such inquiry is being held." (Emphasis supplied.) The language in these sections of the act purports to vest discretion in the court and specifically requires its approval of any grant of immunity. The subsequent section

---

20. "The language of the amendment that 'no such witness shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he is so compelled to testify, after having claimed his privilege against self-incrimination, to testify or produce evidence', is sufficiently broad to ban a subsequent State prosecution if it be determined that the Congress has the constitutional power to do so. In addition, the amendment recommended provides the additional protection —as set forth in the Adams case, by outlawing the subsequent use of the compelled testimony in any criminal proceeding—State or Federal.

"By the use of these two distinct concepts, the committee believes that the fullest protection that can be afforded the witness will be achieved." Committee on the Judiciary, H.R.Rep. No. 2606, 83rd Cong., 2nd Sess., August 3, 1954, p. 7.

(c) pertaining to proceedings before a grand jury or cases before a District Court contains no such reference to the court's function or restriction upon the grant of immunity. The only reference to the court is markedly different from that contained in the sections dealing with congressional investigations. In the instance of grand jury or court proceedings involving national defense or security it must appear (1) that in the judgment of the United States Attorney the testimony of a witness regarding such matters is necessary to the public interest; (2) that the Attorney General has approved the application by the United States Attorney.

The section then provides that upon application "to the court that the witness shall be instructed to testify or produce evidence subject to the provisions of this section, and upon order of the court such witness shall not be excused from testifying or producing books, papers, or other evidence on the ground that the testimony or evidence required of him may tend to incriminate him or subject him to a penalty or forfeiture." Thus the only approval required under section (c) is that of the Attorney General in support of the application of the United States Attorney.

Certainly it is logical to assume that had the Congress intended, with respect to grand jury and court proceedings, to vest the same discretion and power of approval in the court as in the instance of congressional investigations it would have used the very language employed in the section dealing with congressional committees.

Absent a statute granting absolute immunity to a witness who has validly asserted his privilege against self-incrimination the courts are without power to compel him to answer. When an order is sought to force a witness to testify in exchange for immunity against prosecution authorized by statute, he is entitled to advance before the court any other ground, legal or constitutional, for continued refusal to answer. And only when it appears that full and absolute immunity has been substituted for his constitutional right against self-incrimination, and no other legal barrier exists, may he be compelled to answer.[21]

In the present statute the court is empowered to order the witness to answer whenever it appears that the conditions of the grant of immunity, as specified in the statute and as outlined above, exist. Thus the court must be satisfied that (1) the grand jury or court proceeding relates to investigations in cases involving matters enumerated in section (c); (2) the United States Attorney certifies with respect to such matters it is necessary in the public interest that the testimony of the witness who has claimed his privilege be obtained in exchange for a grant of immunity; (3) the Attorney General approves the application; (4) no other legal objection exists to the compulsion of the witness' testimony. Thus the order of the court gives assurance (a) that all conditions have been complied with before the immunity is granted to the witness,—that the immunity power is not frittered away in cases not within the framework of the congressional intent; and (b) that the witness is protected against subsequent prosecution or the use of evidence with respect to matters as to which his testimony has been compelled by a determination that an effective grant of immunity has been made. The immunity takes effect when the court finds that all the prerequisite conditions have been met and the witness has answered the questions as to which he previously asserted the privilege.

I conclude that the statute, by the phrase "upon order of the court" in section (c) refers to the court's function in determining that the application complies with the requirements specified in that section before the witness may

21. Smith v. United States, 337 U.S. 137, 150, 69 S.Ct. 1000, 93 L.Ed. 1264.

be ordered to answer. And this is clearly a judicial function.[22]

But even if ambiguity could be wrung from the statutory language, the witness' contention that the legislative history shows a clear and inescapable congressional purpose to require court approval of each grant of immunity is without force. While the contention may be true of immunity grants by Congress, about which attention was primarily centered, the history shows no such intent as to the section dealing with witnesses before courts and grand juries.

The witness places great reliance on a portion of the report of the House Committee on the Judiciary[23] which states "In all cases where the bill authorizes a grant of immunity after privilege has been claimed, there are at least two other independent but interested parties who must concur in the grant of immunity in order to meet the requirements of the bill."[24] The witness insists that the only possible "independent" parties in cases before courts and grand juries are the Attorney General and the court. But this view ignores the significance of the phrase "interested parties"—an utterly inappropriate description of a court determining a controversy between contending parties. Since the United States Attorney and the Attorney General are to form their judgments separately,[25] the phrase "independent but interested parties" would seem to fit them better than the court.

Moreover, the context of the paragraph refutes the witness' interpretation. After explaining that the procedure necessary to grant immunity before a congressional committee avoids the danger of "immunity baths", the report states that similar precautions exist in cases before courts and grand juries. The explanation continues that if the United States Attorney decides in an authorized matter the public interest requires that immunity be granted to a witness who has asserted his privilege, the prosecutor "must first obtain the approval of the Attorney General for such grant and then apply to the court for the *necessary instruction* to the witness to testify or produce evidence. All conditions must be complied with before the grant of immunity can be given to the witness" (emphasis supplied). This language hardly supports the view that the court is to exercise a discretionary function or a veto power as to whether the testimony of the witness is required in the public interest. The "necessary instruction" to the witness appears to refer to the usual direction or instruction issued by a court whenever a witness refuses, without legal justification, to answer questions before a grand jury or court. This instruction or order issued only after the witness has been afforded an opportunity to advance his objections, forms the basis of subsequent proceedings for failure to comply. Moreover, the two references in the Committee's report to section (c)[26] specifically mention approval by the Attorney General and omit any mention whatsoever of court approval or discretion. Thus the Committee's summary of section (c) parallels the statutory language. Finally, it is not without significance that the Committee's explanation concludes with the statement "All conditions must be complied with before the grant of immunity can be given to the witness."

The witness also relies on statements made during the House debates by Representative Keating, a member of the Judiciary Committee, and one of the

---

22. See Interstate Commerce Commission v. Brimson, 154 U.S. 447, 14 S.Ct. 1125, 38 L.Ed. 1047.

23. This committee substituted its own version for both the bill as it passed the Senate and various bills introduced in the House. Committee on the Judiciary, H.R.Rep. No. 2606, 83rd Cong., 2d Sess., August 3, 1954, p. 3.

24. Id. at 8.

25. Id. at 9.

26. Id. at 8, 9.

bill's leading proponents on the House floor, which tend to support his construction.[27] Whatever force these remarks may have,[28] is however, undermined by the statement of another member of the House Judiciary Committee, Representative Walter, who took a quite different view.[29] In view of the fact that the bill's leading proponents differed as to the role assigned to the courts, and that the Committee report supports the government's view at least as strongly as the witness', the scanty legislative history is far from conclusive. It contains fully as much ambiguity as the witness professes to find in the statute.

But the witness insists that the rejection by the House Committee of Representative Keating's bill which made no provision for court review of immunity grants requires acceptance of his interpretation. This argument fails to take into account the numerous substantial alterations which lead the Committee to draft its own bill as a substitute not only for Mr. Keating's proposal but also for a bill which had passed the Senate.[30] One fundamental change was the insertion of judicial review of legislative grants of immunity in connection with legislative investigations. This provision was apparently inserted to resolve the dispute over whether Congress or the Attorney General should have the ultimate responsibility in granting im-munity to witnesses before congressional committees—a problem entirely absent where the witness testifies before a court or grand jury. An entirely new and basic provision in the Committee bill was the restriction of the statute's scope to matters involving national security. In this connection the Committee bill provided a judicial check to insure that immunity was not granted in situations outside the statute's narrowed compass.[31] In view of the several possible explanations for the substitution of the Committee bill for Representative Keating's proposal and others, the mere fact of substitution adds nothing to the clear words of the statute.

The most that can be said for the legislative history is that it is on the whole inconclusive. Certainly, it contains nothing that requires the court to reject the construction which the statutory language clearly requires. Especially is this so where the construction contended for purports to raise a serious constitutional question as to the role of the judiciary under the doctrine of separation of powers. The Supreme Court has repeatedly warned "if a serious doubt of constitutionality is raised, it is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided."[32] Indeed, the Court has stated that words

---

27. The bill passed the Senate without debate on the motion of Senator McCarran who paraphrased the report of the House Committee on the Judiciary. While saying that the sections dealing with proceedings before Congressional committees and those before courts and grand juries contained "similar provisions" he made no attempt to define the court's role in the latter group. 100 Cong.Rec. 13310 (Aug. 11, 1954).

28. Whether or not statements made during general debate by individual members of the reporting committee are sufficient to show a congressional intent may be open to question. See Jackson, J. concurring in Schwegman Brothers v. Calvert Distillers Corp., 341 U.S. 384, 395, 71 S.Ct. 745, 95 L.Ed. 1035; Note, a Re-eval-uation of the Use of Legislative History in the Federal Courts, 52 Col.L.Rev. 125.

29. 100 Cong.Rec. 12604 (August 4, 1954).

30. Committee on the Judiciary, H.R.Rep. No. 2606, 83rd.Cong., 2nd Sess., August 3, 1954, pp. 3-4.

31. This seems to have been the purport of Mr. Walter's remarks. 100 Cong.Rec. 12604 (August 4, 1954).

32. Crowell v. Benson, 285 U.S. 22, 62, 52 S.Ct. 285, 296, 76 L.Ed. 598; United States v. Rumely, 345 U.S. 41, 45, 73 S.Ct. 543, 97 L.Ed. 770; United States v. C.I.O., 335 U.S. 106, 68 S.Ct. 1349, 92 L.Ed. 1849; Brandeis, J. concurring in Ashwander v. T. V. A., 297 U.S. 288, 341, 348, 56 S.Ct. 466, 80 L.Ed. 688, and cases cited.

may be strained "in the candid service of avoiding a serious constitutional doubt." [33] Here there is no need to strain words. It requires neither torturing of language nor disregard of a clear legislative policy [34] to avoid the constitutional question advanced by the witness. Indeed, to reach the constitutional issue would require straining of language. In such circumstances the court's duty is plainly to avoid the constitutional question.

 Since the statute does not vest power in the court to review the determination of the United States Attorney as concurred in by the Attorney General, the witness' further argument that the court should, upon the facts, overrule the judgment of the United States Attorney that it is in the public interest that immunity be granted necessarily falls.

 Finally, the defendant contends that regardless of the validity of the statute, some of the questions as to which the application is made are immaterial to the matter under investigation and further, that they infringe his rights under the First Amendment to the Constitution of the United States. As to the first objection, since the questions appear to come within the framework of an inquiry into national defense or security, the witness "is not entitled to urge objections of incompetency or irrelevancy, such as a party might raise, for this is no concern of his." [35] The witness' second objection, that questions relating to membership in the Communist Party of himself and others violate his rights under the First Amendment is equally untenable. Any question on this score is concluded by Josephson v. United States, where the power of Congress to inquire into membership in the Communist Party was upheld against a similar objection. [36] If Congress possesses such power it would appear that a grand jury engaged in an inquiry to determine whether a crime has been committed possesses no less power to inquire into the same subject matter.

Accordingly the application to instruct the witness to answer the questions propounded to him before the grand jury and to testify and produce evidence with respect to matters under inquiry before said grand jury is granted.

Since the application contains the detailed questions before the grand jury, in order to preserve the secrecy of the grand jury proceedings the file papers shall be sealed subject to further order of the Court.

Settle order on notice.

33. United States v. Rumely, 345 U.S. 41, 47, 73 S.Ct. 543, 546, 97 L.Ed. 770.

34. Cf. Shapiro v. United States, 335 U.S. 1, 31, 68 S.Ct. 1375, 92 L.Ed. 1787.

35. Blair v. United States, 250 U.S. 273, 282, 39 S.Ct. 468, 471, 63 L.Ed. 979; Nelson v. United States, 201 U.S. 92, 115, 26 S.Ct. 358, 50 L.Ed. 673; United States v. McGovern, 2 Cir., 60 F.2d 880, 888–889; Application of Radio Corp. of America, D.C.S.D.N.Y., 13 F.R.D. 167, 170. But cf. Green v. United States, 2 Cir., 193 F. 2d 111, 113.
Moreover, the questions to which the witness objects appear to be material to the subject matter under inquiry. United States v. Flynn, 2 Cir., 216 F.2d 354, 360.

36. Josephson v. United States, 2 Cir., 165 F.2d 82. Accord: Barsky v. United States, 83 U.S.App.D.C. 127, 167 F.2d 241; Lawson v. United States, 85 U.S. App.D.C. 167, 176 F.2d 49.