### UNITED STATES v. STOEHR.

No. 12000 C. D.

United States District Court
M. D. Pennsylvania.
Sept. 5, 1951.

Arthur A. Maguire, U. S. Atty., Scranton, Pa., Thomas Wood, Jr., Asst. U. S. Atty., Lewisburg, Pa., Edmund Doyle, Dept. of Justice, Washington, D. C., for plaintiff.

Russell J. O'Malley, Scranton, Pa., Thomas D. Caldwell, Harrisburg, Pa., Charles J. Margiotti, and Samuel Goldstein, Pittsburgh, Pa., for defendant.

MURPHY, District Judge.

Defendant, found guilty by verdict of a jury of three violations of § 145(b), Internal Revenue Code, 26 U.S.C.A. § 145 (b),[1] moves for a judgment of acquittal

---

1. "Any person * * * who wilfully attempts in any manner to evade or defeat any tax imposed by this chapter * * * shall, in addition to other penalties provided by law, be guilty of a felony * * *."

and in the alternative for a new trial.[2] Defendant was charged with having wilfully and knowingly attempted to defeat and evade a large part of his income taxes[3] due and owing to the United States of America for 1943, 1944 and 1945 by filing and causing to be filed[4] a false and fraudulent income tax return for each year wherein he knowingly understated his net income and the amount of tax due thereon.

Defense counsel moved for judgment of acquittal at the end of the government's case in chief and again at the conclusion of all the evidence. Although opportunity was afforded no argument was made in support of either motion. Being obviously without merit, both motions were denied. In the consideration of the present motion[5] we have carefully reviewed the entire record of testimony including the exhibits, viewing the evidence and all inferences reasonably deducible therefrom in the light most favorable to the government to ascertain whether or not there was substantial competent evidence to support the verdict.[6] We are of course not here concerned with the weight of the evidence, the credibility of witnesses or conflicts in the testimony, all questions for the jury.[7]

It is unnecessary to recount the evidence at length. Suffice it to say that the jury could have found and, in support of their verdict we may properly assume, did find the following:

Defendant, as sole owner and proprietor, operated a retail household furnishing store at Scranton, Pennsylvania, under the name of Robert E. Stoehr, trading as Stoehr and Fister. Edith Passetti as bookkeeper was in charge of the books of original entry. August W. Tross, defendant's office manager, did all the posting, was in charge of the general ledger cards, and prepared defendant's financial statements. Donald C. Griffiths, a certified public accountant, prepared defendant's income tax returns. He never made an audit of or examined defendant's books of account but relied solely on information prepared by Tross and submitted by defendant or at his direction.

All of defendant's pertinent books, records and income tax returns for 1943, 1944 and 1945 are in evidence. Special Agent Earley and Internal Revenue Agent Watkins made an examination of the books of account and returns in question. They testified—and in this they were corroborated by the documentary evidence—that in each of the three years there were false entries in defendant's ledger cards, unsubstantiated by any entries in defendant's books of original entry, whereby sales were understated, purchases and expenses overstated; that

2. Defendant was indicted and tried at Harrisburg; the jury was kept together; time of trial, 17 court days; a transcript of 1738 pages; 74 government, 80 defense exhibits. As to the place of trial, see United States v. Katz, D.C.M.D.Pa., 78 F.Supp. 21; United States v. Perlstein, D.C.N.J. 39 F.Supp. 965, 968; cf. Gates v. United States, 10 Cir., 122 F.2d 571, at page 577.

3. The several counts of the indictment are identical except as to dates and amounts. Count One as to 1943 included Victory taxes.

4. Return for 1943 filed March 15, 1944; for 1944, March 15, 1945; for 1945, June 26, 1946.

5. See Gaunt v. United States, 1 Cir., 1950, 184 F.2d 284, at page 290, certiorari denied 340 U.S. 917, 71 S.Ct. 350, 95 L.Ed. 662.

6. Glasser v. United States, 1942, 315 U.S. 60, at page 80, 62 S.Ct. 457, 86 L.Ed. 680; United States v. Manton, 2 Cir., 1938, 107 F.2d 834, 839, certiorari denied 309 U.S. 664, 60 S.Ct. 590, 84 L.Ed. 1012; United States v. Sorrentino, D.C., 78 F.Supp. 425, 428, affirmed 3 Cir., 175 F.2d 721, certiorari denied 338 U.S. 868, 70 S.Ct. 143, 94 L.Ed. 532, rehearing denied 338 U.S. 896, 70 S.Ct. 238, 94 L.Ed. 551; United States v. Michener, 3 Cir., 1945, 152 F.2d 880, 885; Affronti v. United States, 8 Cir., 1944, 145 F.2d 3, 5; Walker v. United States, 8 Cir., 1937, 93 F.2d 383, at page 392.

7. United States v. Toscano, 2 Cir., 1948, 166 F.2d 524, 526; France v. United States, 164 U.S. 676, at page 681, 17 S.Ct. 219, 41 L.Ed. 595; Morrissey v. United States, 9 Cir., 1933, 67 F.2d 267, at page 271.

defendant's returns grossly understated his net income and the tax due thereon. The agents computed and Watkins testified as to the exact amount of tax due and unreported in defendant's returns. Their testimony may be summarized as follows:

| | Sales Omitted | Purchases Overstated | Expenses Overstated | Total |
|---|---|---|---|---|
| 1943 | $ 48,283.39 | $118,784.06 | $ 4,059.00 | $171,126.45 |
| 1944 | 51,716.61 | 35,196.75 | 8,497.04 | 95,410.40 |
| 1945 | 71,187.40 | 32,847.57 | | 104,034.97 |
| | $171,187.40 | $186,828.38 | $12,556.04 | $370,571.82 |

| | Actual Net Income | Reported Net Income | Net income Understated |
|---|---|---|---|
| 1943 | $237,620.40 | $ 66,493.95 | $171,126.45 |
| 1944 | 174,039.03 | 78,628.63 | 95,410.40 |
| 1945 | 164,739.84 | 60,704.87 | 104,034.97 |
| | $576,399.27 | $205,827.45 | $370,571.82 |

| | Actual Tax Due | Reported Tax Due | Actual Tax Due Understated |
|---|---|---|---|
| 1943 | $193,547.77 | $ 39,261.70 | $154,286.07 |
| 1944 | 137,311.05 | 50,238.05 | 87,073.25 |
| 1945 | 128,651.46 | 35,517.80 | 93,133.66 |
| | $459,510.28 | $125,017.55 | $334,492.98 |

In reporting a net income of $205,827.45 for the three years defendant understated correct net income by $370,571.82; in reporting a tax due of $125,017.55 he understated the correct amount by $334,492.98 (exclusive of penalties and interest).

In each of the three years after the true net income for the year was ascertained, two sets of financial statements were prepared, one set true for the eyes of defendant and Tross only, the other set false to be submitted to Griffiths for preparation of defendant's income tax return. At defendant's request and direction and with his knowledge, in order to reduce apparent net income and the amount of income taxes defendant would have to pay, false entries were made whereby a portion of inventory was dropped, purchases and expenses overstated, sales understated. Likewise defendant's living expenses, the purchase of $110,000 in United States government bonds, and the payment of $32,847.57 personal life insurance premiums, were disguised on defendant's records—personal expenses charged as business expenses, life insurance premiums charged as furniture, carpet and drapery purchases. Bonds were not listed as an asset or as a reduction in capital account.[9] None of the foregoing was shown on the statements furnished to Griffiths.

In 1943 Tross explained to the defendant the items and amounts used (defendant's reason 15C). In 1944 and 1945 the mechanics were left to Tross' discretion. In 1944 Tross suggested the formation of a family partnership as a safe method. In 1945 the figures had to be revised three times before defendant was satisfied with the result.

As evidence of intent the government proved by Tross that in the defendant's re-

9. Personal expenses in all three years; bonds in 1944 and 1945; insurance premiums in March 1945. The bonds were left without date and the cards set to one side. All false entries, except as to charging insurance premiums in the cash book, were made on defendant's ledger cards.

turns for 1939 to 1942, inclusive, at defendant's request and with his knowledge and direction, the amount of inventory was deliberately understated in order to defeat and evade payment of defendant's income taxes for each of those years.

March 15, 1946, defendant sold the business. In early 1947 Griffiths made repeated requests for a balance sheet and reconciliation of capital account in order to prepare defendant's income tax return for 1946. When the information was not forthcoming, a return was prepared without the basic information and filed with a certificate that no audit of defendant's books of account was made.

In order to get the facts involved, a meeting was arranged with defendant and Tross. After much insistence he finally learned from papers then submitted that the figures furnished him for 1944 were false. When he confronted the defendant with this fact and asked if the same was true as to the other years, defendant broke down and admitted that the statements furnished Griffiths had been falsified to reduce defendant's income taxes; that while he did not know the amounts, he knew what it meant, felt very bad about it, and offered to pay Griffiths any price, any fee, if he would keep the matter quiet.

On the witness stand defendant admitted that he signed the returns, caused them to be filed and paid the tax stated to be due thereon; that the 1943 return was false; that in 1943 and 1945, sales and purchases were incorrectly stated; that they obviously varied from those shown in a private personal record prepared by Tross for defendant's eyes only and kept in his possession; that for the three years in question he paid far less taxes than were due; that Peterson, his accountant, advised him that

for the three years there were taxes owed and unpaid of $278,000.

He insisted that he never examined more than the front page of the return; never compared the figures thereon with those in his possession, or checked the calculations made. Despite his many years experience and his close attention to details of his business he testified that he was not aware of what profits he made. He stated—and all the evidence is to the same effect—that Griffiths was in no manner responsible for the variance between defendant's records and his returns. He denied making any requests or giving any directions to Tross to falsify his records on his behalf, insisted he never had any knowledge that such things were done.

As to the accuracy of his books and records he relied on Tross. As to the correctness and accuracy of his returns he relied on Tross and Griffiths.

When Griffiths was unable to obtain the facts in connection with defendant's returns, prepared and filed by him and attested as having been correct, he reported the matter to the Group Chief of the Internal Revenue Office at Scranton, Pennsylvania, on April 23, 1947, advising that the defendant and Tross had admitted to him that the information furnished to him to prepare defendant's returns was falsified, and that he no longer represented the defendant. An investigation was commenced immediately. Defendant was indicted March 1, 1950.

█ In view of the foregoing, a jury would have no difficulty in finding that all of the averments of the indictment were fully and adequately established by substantial and competent evidence [10] beyond a reasonable doubt. In the light of the cases interpreting § 145(b) [11] it is abund-

10. Battjes v. United States, 6 Cir., 1949, 172 F.2d 1, at page 5.

11. See e. g., Spies v. United States, 317 U.S. 492, 499, 63 S.Ct. 364, 87 L.Ed. 418; United States v. Johnson, 319 U.S. 503, 63 S.Ct. 1233, 87 L.Ed. 1546; United States v. Croessant, 3 Cir., 1949, 178 F.2d 96, certiorari denied 339 U.S. 927, 70 S.Ct. 626, 94 L.Ed. 1348; United States v. Augustine, 3 Cir., 1951, 189 F.2d 587; Cave v. United States, 8 Cir., 1947, 159 F.2d 464, certiorari denied 331 U.S. 847, 67 S.Ct. 1732, 91 L.Ed. 1856, rehearing denied 332 U.S. 786, 68 S.Ct. 34, 92 L.Ed. 369; Myres v. United States, 8 Cir., 1949, 174 F.2d 329, certiorari denied 338 U.S. 849, 70 S.Ct. 91, 94 L. Ed. 520; Rick v. United States, 82 U. S.App.D.C. 101, 161 F.2d 897; Himmelfarb v. United States, 9 Cir., 175 F.2d 924.

antly clear that the verdict of the jury on all three counts is well sustained.

Unless there was error in the conduct of the trial the verdict of the jury must stand. Defendant alleges error:

In the admission and exclusion of evidence; restriction of the scope of cross examination; denial of motions for a mistrial because of (a) statements by the witness Tross, (b) the jury saw a movie; refusal of several requests for charge; the charge of the court was erroneous, inconsistent and prejudicial;[12] and finally the conduct of the trial judge throughout the trial.

During a recess, immediately upon the conclusion of the court's charge, chief counsel for the defense stated to the court and to the press [13] that it was "one of the fairest charges" he had ever heard, that it was "only the fourth time in his long career in which he took no exceptions to the charge". See United States v. Rutkin, 3 Cir., 1951, 189 F.2d 431, at pages 440, 441; Johnson v. United States, 318 U.S. 189, at page 201, 63 S.Ct. 549, 555, 87 L.Ed. 704; cf. Langford v. United States, 9 Cir., 1949, 178 F.2d 48, at page 54. Shortly after one of defense counsel wrote expressing appreciation for the "courtesy and graciousness" extended by the court throughout the trial; a third member of defense counsel did not sign the copy of defendant's additional reasons.[14]

 Notwithstanding what his counsel did, the defendant has a right to have his guilt or innocence found by a jury according to the procedure and standards appropriate for criminal trials in the federal courts. If any error was therefore committed during the course of the trial which affected his substantial rights the failure of counsel to call it to the attention of the trial court should not preclude its being noticed and corrected.[15]

For every critical judgment however there must be a standard. It would appear from the reasons assigned that the learned counsel for the defense show an inadequate conception of a trial judge's proper function in a jury trial in a federal court.[16]

 The trial judge is not a mere moderator, but a governor of the trial for the purpose of assuring its proper conduct.[17] It is his duty and responsibility to control the conduct of the trial, to facilitate its orderly progress, and clear the path of petty obstructions to the end that the evidence shall be presented honestly, expeditiously, and in such form as to be

12. Defendant submitted 52 requests for charge, the government 8. We made clear our position thereon in compliance with 18 U.S.C.A., Rule 30, Federal Rules of Criminal Procedure, and United States v. Crescent-Kelvan Co., 3 Cir., 164 F. 2d 582, at page 589.

13. Scranton, Pennsylvania, Tribune, May 27, 1950, pp. 1, 8.

14. At defendant's request he was permitted by order of court within the five day period to file additional reasons after the testimony was filed. 18 U.S.C.A. supra, Rule 33.

15. Bollenbach v. United States, 326 U.S. 607, at page 614, 66 S.Ct. 402, 90 L.Ed. 350; United States v. Ward, 3 Cir., 1948, 168 F.2d 226, at page 228; United States v. Levi, 7 Cir., 1949, 177 F.2d 833, 835–836; Glasser v. United States, 315 U.S. 60, at page 71, 62 S.Ct. 457, 86 L.Ed. 680; 18 U.S.C.A. supra, Rule 52; cf. United States v. Raub, 7 Cir., 1949, 177 F.2d 312, at page 315 (not lightly invoke Rule 52(b); Langford v.

United States, supra, 178 F.2d at page 54 (depends upon the gravity of the error in the particular case—upon how flagrantly the rights of the accused have been disregarded).

16. See Learned Hand J. in Farish Co. v. Madison Distributing Co., Inc., 2 Cir., 1930, 37 F.2d 455, at page 459, cited with approval in United States v. Angelo, 3 Cir., 1946, 153 F.2d 247, at page 252; Vinci v. United States, 1947, 81 U.S. App.D.C. 386, 159 F.2d 777; Griffin v. United States, 1947, 83 U.S.App.D.C. 20, 164 F.2d 903; McGuire v. United States, 1948, 84 U.S.App.D.C. 64, 171 F.2d 136; cf. Billeci v. United States, 1950, 87 U.S. App.D.C. 274, 184 F.2d 394, at pages 402, 403.

17. Quercia v. United States, 289 U.S. 466, at page 469, 53 S.Ct. 698, 77 L. Ed. 1321; Glasser v. United States, supra, 315 U.S. 60, at page 82, 62 S.Ct. 457; Bollenbach v. United States, supra, 326 U.S. 607, at page 612, 66 S.Ct. 402.

readily and intelligently understood not only by the court but by the jury.[18] To insure that this is done the trial judge has no more important duty than to clarify the testimony of witnesses, to confine such testimony to relevant matters and to ask questions for the purpose of developing the facts so that all the truth is brought out and that the jury may arrive at a true verdict to the end that justice may be attained by the parties.[19] He must do so in a non-prejudicial manner with circumspection and caution. The extent to which he shall intervene for this purpose is largely a matter of discretion. "* * * That he is free, not only to give his impressions of the witnesses, but to point out the rational implications of the evidence, is too well settled in federal trials to admit of any dispute." [20]

He should not assume the role of a witness. He may analyze and dissect the evidence but never distort or add to it. If he gives an opinion on the evidence great care should be taken so as not to mislead and especially that it should not be onesided. Deductions and theories not warranted by the evidence should be studiously avoided.[21] Power is universally accorded to a federal judge to express his opinion on the facts, provided he makes it plain to the jury that they need not agree with him.[22] The impartiality of the trial judge and the sedulous avoidance of appearing to become an advocate of either side is most important. He should be calmly judicial and dispassionate so that by no word or act of his may the jury be able to detect his personal conviction as to guilt or innocence.[23] We realize that "The influence of the trial judge on the jury 'is necessarily * * * of great weight' and 'his lightest word or intimation is received with deference, and may prove controlling' ",[24] and that he should strive for that atmosphere of thorough-going and perfect impartiality which is so much desired in a judicial proceeding.

A trial is however not a mere exercise in logical perfection.[25] We realize

18. United States v. Angelo, supra, 153 F. 2d at page 251, citing in footnote 10 Rule 105, Model Code of Evidence, A. L.I.; Adler v. United States, 5 Cir., 1910, 182 F. 464, at pages 472–473 (in this case court conducted hostile cross examination of defendant's witnesses); Sweeney v. Blue Anchor Beverage Co., 325 Pa. 216, at page 221, 189 A. 331; Pierkowskie v. New York Life Ins. Co., 3 Cir., 1945, 147 F.2d 928, at pages 933, 935; United States v. Amorosa, 3 Cir., 1948, 167 F.2d 596, at page 600.

19. United States v. Amorosa, supra, 167 F.2d at page 600; Simon v. United States, 4 Cir., 123 F.2d 80, 83; United States v. Lee, 7 Cir., 107 F.2d 522, 529; Glasser v. United States, supra, 315 U. S. at page 82, 62 S.Ct. at page 470; United States v. Breen, 2 Cir., 1938, 96 F.2d 782, at page 784; Garber v. United States, 6 Cir., 1944, 145 F.2d 966, 971; McGuire v. United States, 1948, 84 U.S. App.D.C. 64, 171 F.2d 136, at page 137; Ochoa v. United States, 9 Cir., 167 F.2d 341, at page 344.

20. Learned Hand J. in United States v. Frankel, 2 Cir., 1933, 65 F.2d 285, at page 288; Patton v. United States, 281 U.S 276, at page 289, 50 S.Ct. 253, 74 L.Ed. 854.

21. Quercia v. United States, supra, 289 U.S. at page 470, 53 S.Ct. at page 699.

22. Learned Hand J. in United States v. Chiarella, 2 Cir., 184 F.2d 903, at page 908; Graham v. United States, 231 U.S. 474, 480, 34 S.Ct. 148, 58 L.Ed. 319; Horning v. District of Columbia, 254 U.S. 135, 138, 41 S.Ct. 53, 65 L.Ed. 185; as to the duty to make clear that statements as to facts are based on the court's recollection and not binding on jury, see United States v. Bob, 2 Cir., 1939, 106 F.2d 37, at page 40, 125 A.L.R. 502, certiorari denied 308 U.S. 589, 60 S.Ct. 115, 84 L.Ed. 493.

23. Adler v. United States, supra, 182 F. at page 472; Glasser v. United States, supra, 315 U.S. at pages 82–83, 62 S.Ct. at pages 470–471; Garber v. United States, supra, 145 F.2d at page 972; Egan v. United States, 1923, 52 App.D. C. 384, 287 F. 958, at page 971; in Frantz v. United States, 6 Cir., 1933, 62 F.2d 737, at page 739, court took no pains to avoid disclosure of opinion to jury.

24. Quercia v. United States, supra, 289 U.S. at page 470, 53 S.Ct. at page 699; Starr v. United States, 153 U.S. 614, at 624–626, 14 S.Ct. 919, 923, 38 L.Ed. 841.

25. United States v. Chiarella, supra, 184 F.2d at page 908.

also that the hitherto practically impossible has not been here achieved.[26] It is not always possible during the trial of a hotly contested case for a judge, however impartial he may be, to maintain in the courtroom an atmosphere of complete judicial calm which is so much to be desired. The human element cannot be entirely eliminated from the trial of a case.[27] A trial judge has the right to insist that the proceedings before him be conducted with the decorum and dignity necessary to effect a fair and impartial trial to the end that justice may be attained.[28] In order to do so there were times during the trial when the court was obliged to be strict but fair. See United States v. Johnson, 3 Cir., 1947, 165 F.2d 42, at page 50. While we were not confronted with the serious problem in this regard some judges have had to face[29] we were on occasion required to discountenance defense counsel's conduct and to admonish him firmly but nevertheless in such manner that it would not in any wise prejudice the substantial rights of the defendant. On the contrary the trial judge showed solicitude for his essential rights at all times. See Glasser v. United States, supra, 315 U.S. at page 71, 62 S.Ct. at page 465. Cf. May v. United States, supra, 175 F.2d at page 1010; Mansfield v. United States, 8 Cir., 1935, 76 F.2d 224, at page 232; Goldstein v. United States, supra, 63 F.2d at page 614; Garber v. United States, supra, 145 F.2d at page 973; United States v. Breen, supra, 96 F.2d at page 784; United States v. Chiarella, supra, 184 F.2d at page 907; McGuire v. United States, supra, 171 F.2d at page 137.

"So long as proper guidance by a trial court leaves the jury free to exercise its untrammeled judgment upon the worth and weight of testimony, and nothing is done to impair its freedom to bring in its verdict and not someone else's we ought not be too finicky or fearful in allowing some discretion to trial judges in the conduct of a trial and in the appropriate submission of evidence within the general framework of familiar exclusionary rules." United States v. Johnson, 319 U.S. 503, at pages 519, 520, 63 S.Ct. 1233, at page 1241, 87 L.Ed. 1546.

"'On the judge rests the chief responsibility for the result; he is the cornerstone of any effective administration of trial by jury, and we are disposed to give him great leeway.'" United States v. Angelo, supra, 153 F.2d at page 252.

 The trial judge has a well-established range of judicial discretion in ruling upon preliminary questions of fact,[30] as to leading questions,[31] whether a witness may be recalled,[32] a witness may be permitted to explain his answer.[33] It is entirely proper for a court to indicate to counsel the basis for his rulings upon matters of evidence not only in the interest of fairness but for the guidance of counsel in the subsequent examination.[34] He may shorten the examination of witnesses.[35]

26. Paschen v. United States, 7 Cir., 1934, 70 F.2d 491, at page 504.

27. Goldstein v. United States, 8 Cir., 1933, 63 F.2d 609, at page 613; United States v. Glasser, 7 Cir., 1941, 116 F.2d 690, at page 704.

28. United States v. Ward, supra, 168 F.2d at page 229; United States v. Hudson and Goodwin, 7 Cranch 32, 11 U.S. 32, 3 L.Ed. 259, 260; Anderson v. Dunn, 6 Wheat 204, 227, 19 U.S. 204, 227, 5 L. Ed. 242; Ex parte Terry, 128 U.S. 289, 9 S.Ct. 77, 32 L.Ed. 405; In re Oliver, 333 U.S. 257, at page 274, 68 S.Ct. 499, 92 L.Ed. 682; Hargrove v. United States, 8 Cir., 25 F.2d 258, 261; May v. United States, 84 U.S.App.D.C. 233, 175 F.2d 994, at page 1010.

29. E.g., United States v. Ward, supra, 168 F.2d at page 229; United States v. Katz,

3 Cir., 173 F.2d 116; Magen v. United States, 2 Cir., 1928, 24 F.2d 325, 329.

30. Nardone v. United States, 308 U.S. 338, 342, 60 S.Ct. 266, 84 L.Ed. 307.

31. United States v. Montgomery, 3 Cir., 1942, 126 F.2d 151, at page 153.

32. United States v. Klass, 3 Cir., 1948, 166 F.2d 373, at page 376.

33. United States v. Graham, 2 Cir., 1939, 102 F.2d 436, at page 441.

34. Chapman v. Alton R. Co., 7 Cir., 1941, 117 F.2d 669, at page 671, and see Pierkowskie v. New York Life Ins. Co., supra, 147 F.2d at page 935; cf. United States v. Johnson, 3 Cir., 1942, 129 F.2d 954, at page 956, 144 A.L.R. 182.

35. Farish Co. v. Madison Distributing Co., Inc., supra, 37 F.2d at page 459.

 Cross examination of a witness is a matter of right.[36] Its permissible purposes, among others, are that all facts and circumstances within his knowledge may be brought out which tend to qualify or destroy his direct testimony or to discredit him by showing that his testimony in chief was untrue or biased, to affect credibility or to show intent. Alford v. United States, supra, 282 U.S. at page 692, 51 S.Ct. at page 219; United States v. Manton, supra, 107 F.2d at page 845. A reasonable latitude must be allowed. Greater leeway is afforded where a party to the cause is being examined. Garber v. United States, supra, 145 F.2d at page 970; Banning v. United States, 6 Cir., 130 F.2d 330, at page 339. The discretion of the trial court comes into play only after a substantial opportunity has been afforded.[37] Courts should not shut out the truth but endeavor to develop it. United States v. Haynes, D.C., 81 F.Supp. 63, at page 70, affirmed 3 Cir., 173 F.2d 223.

 Obviously to prevent inquiry where cross examination is appropriate and particularly on matters of credibility and the commission by the accused of the acts relied upon for conviction would be error. District of Columbia v. Clawans, 300 U.S. 617, 632, 57 S.Ct. 660, 81 L.Ed. 843. Probative remoteness is not alone a reason for exclusion. Evidence may be excluded if it is not germane and its only tendency would be to confuse the jury. United States v. Werner, 2 Cir., 160 F.2d 438, 443; United States v. Skidmore, 7 Cir., 1941, 123 F.2d 604, at page 610, certiorari denied 315 U.S. 800, 62 S.Ct. 626, 86 L.Ed. 1201.

 The extent of cross examination with respect to an appropriate subject of inquiry is within the sound discretion of the trial court. It may exercise a reasonable judgment in determining when the subject is exhausted. Alford v. United States, supra, 282 U.S. 687, at page 694, 51 S.Ct. at page 220; Glasser v. United States, supra, 315 U.S. at page 83, 62 S.Ct. at pages 470, 471. He may reasonably exclude questions irrelevant to the substantial issues of the case and of slight bearing on the bias and credibility of witnesses. District of Columbia v. Clawans, supra, 300 U.S. at page 632, 57 S.Ct. at page 665.

 In view of the rule in federal courts, ordinarily cross examination must be restricted to what has been covered on direct. If a party wishes to examine the witness as to other matters he must do so by making the witness his own and calling him as such in the subsequent progress of the case. Moyer v. Aetna Life Ins. Co., 3 Cir., 126 F.2d 141, at page 143;[38] United States v. Hornstein, 7 Cir., 1949, 176 F.2d 217, at page 221.

 An unusual case might arise where a party may be permitted within reasonable limits to involve new matters even though they are properly the subject of defense. Wills v. Russell, 100 U.S. 621, at pages 625, 626, 25 L.Ed. 607. Credibility cannot however be tried by raising and trying a wholly independent issue as to a witness' honesty and motives. Daniels v. United States, 6 Cir., 196 F. 459, 464.

 The extent to which cross examination may be allowed on collateral matters is peculiarly within the trial court's discretion. United States v. Manton, supra, 107 F.2d at page 845. It has long been settled that the answers of a witness on cross examination with respect to a collateral matter introduced for impeachment purposes concludes the inquiry. United States v. Klass, supra, 166 F.2d at page 376.

---

36. Alford v. United States, 282 U.S. 687, at page 691, 51 S.Ct. 218, 75 L.Ed. 624; United States v. Michener, supra, 152 F.2d 884.

37. Lindsey v. United States, 1942, 77 U.S. App.D.C. 1, 133 F.2d 368, 369; United States v. Toner, D.C., 77 F.Supp. 908, at page 913, footnote 7, reversed on other grounds, 3 Cir., 173 F.2d 140.

38. "Although the rule has been the subject of vigorous attack as being unsound in reason and without justification in history [Wigmore on Evidence (Third Edition) §§ 1885–1890] and has been to some extent modified in Pennsylvania, the state of its origin, it continues to be the rule in the Federal courts." See opinion Id., Maris J.

▮ The trial judge has a duty to protect the witness from questions which go beyond the bounds of proper cross examination merely to harass, annoy or humiliate him. Alford v. United States, supra, 282 U.S. at page 694, 51 S.Ct. at page 220. As was so cogently observed by the Supreme Court of Pennsylvania in Elliott v. Boyles, 31 Pa. 65, 66: "Witnesses often suffer very unjustly from this undue earnestness of counsel, and they are entitled to the watchful protection of the court. In the court, they stand as strangers, surrounded with unfamiliar circumstances, giving rise to an embarrassment known only to themselves, and in mere generosity and common humanity, they are entitled to be treated, by those accustomed to such scenes, with great consideration; at least, until it becomes manifest that they are disposed to be disingenuous. The heart of the court and jury, and all disinterested manliness, spontaneously recoils at a harsh and unfair treatment of them, and the cause that adopts such treatment is very apt to suffer by it; it is only where weakness sits in judgment, that it can benefit any cause. Add to this, that a mind rudely assailed, naturally shuts itself against its assailant, and reluctantly communicates the truths that it possesses."

In the instant case the defense very thoroughly developed the various avenues of cross examination on all material issues. Anything further would have been cumulative. The cross examination was certainly not unduly restricted. Cf. United States v. German-American Vocational League, Inc., 3 Cir., 1946, 153 F.2d 860, 865; United States v. 3.544 Acres of Land, etc., 3 Cir., 1945, 147 F.2d 596, at page 601.

As to the reasons generally, Nos. 1, 2, 3, 4, 11 and 18 have been disposed of, supra.[39]

▮ Defendant asserts error in permitting certain answers of witnesses to stand. The answers were more fact than conclusion.[40] See United States v. Augustine, supra, 189 F.2d at page 589, and see Learned Hand J. in United States v. Petrone, 2 Cir., 1950, 185 F.2d 334, at page 336: "The question ought always to be whether it is more convenient to insist that the witness disentangle in his own mind—which, much more often than not, he is quite unable to do—those constituent factors on which his opinion is based; or to let him state his opinion and leave to cross examination a searching inquisition to uncover its foundations." See 20 Am.Jur. § 771, p. 643, and Wigmore, § 300, p. 192, § 655, p. 759, § 658, p. 768, § 659, p. 770.

After the testimony was closed and judgment of acquittal denied, defendant moved to strike all of Watkins' testimony (15G), alleging that he testified from a memorandum only. The record is to the contrary. The witness was permitted, without objection, to use a work sheet prepared by him during the trial, based on testimony already adduced and an examination of defendant's books of account, to refresh his recollection. See United States v. Riccardi, 3 Cir., 1949, 174 F.2d 883. Assuming the correctness of defendant's books, except as noted, he stated the amount of unreported net income and computed the tax due for each of the three years. The work sheet was used only to a slight extent.[41] See Shreve v. United States, 9 Cir., 1939, 103 F.2d 796, at page 811. In receiving the expert testimony we cited United States

---

39. See defendant's reason 16: (K) the question was asked and answered; (H) the question was permitted and not asked; (C) the question involving a collateral matter was already answered and later covered in Griffiths' testimony; (A) the question involved self-serving declarations and defense on cross examination and was later fully developed.

40. See defendant's reason 15: (C) Tross told him; (D) Tross told him and he approved it—not to falsify or understate income as asserted; (B) Tross knew this because of the previous deception;

(E) the answer was responsive to a question which asked for an answer and an explanation.

41. The motion came too late. See 1 Wigmore, 3d Ed., § 18, p. 321; McCullough v. Ry. Mail Ass'n, 225 Pa. 118, 73 A. 1007; Forster v. Rogers Bros., 247 Pa. 54, at page 63, 93 A. 26. A rule of evidence not invoked is waived. Diaz v. United States, 223 U.S. 442, at page 450, 32 S.Ct. 250, 56 L.Ed. 500; Poluski v. Glen Alden Coal Co., 286 Pa. 473, at page 476, 133 A. 819.

v. Johnson, supra, 319 U.S. 503, at page 519, 63 S.Ct. 1233, and instructed the jury that it was received as an aid to the jury only, that the ultimate facts were for their decision.

▮ Defendant admitted $278,000 taxes were unpaid. The precise amount of tax was not the gist of the offense. Cave v. United States, supra, 159 F.2d at page 468; Gleckman v. United States, 8 Cir., 1935, 80 F.2d 394, at page 401.

▮ It was sufficient that defendant knowingly and wilfully attempted to defeat or evade a substantial part of the tax for each year. United States v. Johnson, supra, 319 U.S. at page 517, 63 S.Ct. at page 1240; United States v. Augustine, supra, 189 F.2d at page 590; Tinkoff v. United States, 7 Cir., 1937, 86 F.2d 868, certiorari denied 301 U.S. 689, 57 S.Ct. 795, 81 L. Ed. 1346; Bowles v. United States, 4 Cir., 1934, 73 F.2d 772; Paschen v. United States, supra, 70 F.2d at page 500; Cooper v. United States, 8 Cir., 1925, 9 F.2d 216, at page 222.

▮ The general test of the admissibility of such testimony is whether it gives needed help. United States v. Augustine, supra, 189 F.2d at page 590; Myres v. United States, supra, 174 F.2d at page 336; United States v. Renee Ice Cream Co., 3 Cir., 1947, 160 F.2d 353, at page 355; Trowbridge v. Abrasive Co. of Phila., 3 Cir., 1951, 190 F.2d 825; United States v. Hornstein, supra, 176 F.2d at page 221. It did so here.

▮ We denied defendant's motion for a mistrial (reason 13, R. p. 1421) sought because the jury, kept together during the trial, allegedly saw a movie involving crime generally, and some mention of income taxes. Based on hearsay, defense counsel stated that when income taxes were mentioned one of the jurors made some remark in regard thereto. The report was not clear as to what the remark was. The court must rely upon what the record shows. Vinci v. United States, supra, 159 F.2d at page 779; Billeci v. United States, supra, 184 F.2d at page 401. The burden was upon counsel for the defendant to show that prejudice had resulted. United

States v. Katz, D.C., 78 F.Supp. 435, at page 439, affirmed, 3 Cir., 173 F.2d 116, at page 117; United States v. Griffin, 3 Cir., 176 F.2d 727, at page 731. He made no request to question the jury or to have the court question them.

▮ Throughout the trial the jurors were cautioned not to discuss the case among themselves until it was finally submitted to them; not to permit any one to discuss it in their hearing and, if any one attempted to do so, the matter should be reported to the court immediately. No such report was made. We were not persuaded by what was presented to us that there was the slightest reason for inferring that any harm could possibly have resulted to the defendant. In our charge we advised the jury the case should be decided solely on the law and the evidence heard from the witness stand, to disregard anything they may have heard or read in the newspapers or in the movies if they were at the movies. We were entitled to consider— see United States v. Griffin, supra, 176 F. 2d at page 731—that we were dealing with an intelligent American jury of honesty and integrity. In our judgment there is no doubt that the jury followed the instructions given to them. Cf. United States v. Pannell, 3 Cir., 178 F.2d 98, at page 99. As Mr. Justice Holmes said in Holt v. United States, 218 U.S. 245, at page 251, 31 S.Ct. 2, at page 6, 54 L.Ed. 1021, 20 Ann.Cas. 1138, "If the mere opportunity for prejudice or corruption is to raise a presumption that they exist, it will be hard to maintain jury trial under the conditions of the present day."

▮ Absent any challenge by way of credible evidence, defendant's books of account could be used as admissions against interest to make out a prima facie case. Stillman v. United States, 9 Cir., 1949, 177 F.2d 607, at page 618; United States v. Hornstein, supra, 176 F.2d at page 220. When using them as admissions the government was not obliged to prove they were correct. Cf. Paschen v. United States, supra, 70 F.2d at page 501. Mertens Law of Federal Income Taxation, § 55.54, p. 98. Defense counsel however

asked more than a score of questions to prove that the books of original entry were complete and accurate.

After defense counsel had asked a great number of questions inquiring as to whether or not the agents had verified the books of original entry the court at R. p. 776 observed: " * * * We understand the witnesses * * * ·have testified that the books of original entry are correct; that [at no time has there been any challenge of the books] * * * except in regard * * * (to charging personal insurance premiums as purchases * * *)." (Brackets supplied). Defense counsel then stated they had not admitted that they were correct. His statement did not constitute evidence of incorrectness. United States v. Hornstein, supra, 176 F.2d at page 219.

■■■ Defendant cites the bracketed phrase out of context (17C) and argues that the court thereby inferred the government had proved understatement of net income. The books were the best evidence of what net income was; the testimony of the experts was secondary and explanatory only. Mertens, Op.Cit. supra, § 55.56. A comparison with the returns would show whether or not net income was in fact understated. The ultimate question as to the correctness of the books and whether or not defendant did understate his net income based upon all the evidence was solely a question for the jury, to whom it was submitted. See R. pp. 776–781.

We rejected the following inquiries involving collateral matters:

(12) Defendant's Exhibit No. 36 was a conglomeration of cards for different years and various individuals. We suggested that if any particular cards were pertinent we would receive them. ·See United States v. Michener, supra, 152 F.2d at page 885.

■■■ (16D) Whether Tross engaged in manipulation for defendant's predecessors, without their knowledge to refute the inference that he learned to manipulate at defendant's request. Where he learned to do so was not an issue. The question was did he do so in 1943, 1944 and 1945 at defendant's request and with his knowledge. See Goodman v. United States, 7 Cir., 1930, 39 F.2d 524, at page 527.

■■■ (16E) Defendant sought to prove on the government's side that defendant was required to take out life insurance as collateral to loans in 1939–1942 and to show that premiums thereon were deductible as business expenses. If material it was a matter of defense and could then be proved only by the best evidence and not by hearsay.

■■■ (16G)–(I)–(0) Defendant denied that Tross suggested a family partnership as a safe method to reduce income taxes. On July 1, 1945, he did however organize three corporations allegedly on the advice of counsel and of Griffiths to reduce his individual net profit. There was no charge, intimation made, or evidence offered of any failure of defendant to report any income received therefrom. All questions in regard to the formation thereof, as well as the corporate records and returns were therefore excluded as collateral matters, incompetent and hearsay.[42] See Greenbaum v. United States, 9 Cir., 1935, 80 F.2d 113, at page 125; United States v. Campanaro, D.C., 63 F.Supp. 811, at pages 813, 814.

---

42. As to 16G the defendant's testimony covered the matter in question.

A corporation and its stockholders are separate and distinct entities in tax cases. Commissioner of Internal Revenue v. Eldridge, 9 Cir., 79 F.2d 629, at page 631, 102 A.L.R. 500.

We assume, without deciding, that the method employed was legal. The legal right of a taxpayer to decrease the amount of what otherwise would be his tax, or altogether avoid them by means which the law permits cannot be doubted. Gregory v. Helvering, 293 U.S. 465, at page 469, 55 S.Ct. 266, 79 L.Ed. 596, 97 A.L.R. 1355; 27 Am.Jur. Tit. Income Taxes, § 248, p. 451; Commissioner of Internal Revenue v. Eldridge, supra, 79 F.2d at page 631, 102 A.L.R. 500. "It is the right as well as the interest of the taxpayer to limit his admission of liability to the amount he actually owes." Spies v. United States, supra, 317 U.S. page 496, 63 S.Ct. at page 367.

(9 and 16A) Defendant's 1939 to 1942 returns, offered to prove defendant's income for those years, were rejected as hearsay and involving a collateral matter. Defendant offered no competent evidence to refute Tross' statement that net income in those years was knowingly and deliberately understated for tax purposes.

Defendant objected to permitting the government on redirect examination (15A) to show that defendant supplied false figures for the preparation of his 1939 to 1942 returns, as evidence of intent.

 The subject was opened on direct and developed on cross examination. No objection is made to relevancy as such but that the testimony was received on redirect only because defense counsel opened the door on cross examination. The record is to the contrary. Upon reception of the evidence, we cited Malone v. United States, 7 Cir., 1938, 94 F.2d 281, at page 287.[43] An accused cannot complain that details of an occurrence were developed on redirect which he brought into the case on cross examination. United States v. Chiarella, supra, 184 F.2d at page 907.

 The order of proof is a matter addressed to the sound discretion of the trial court whose action will not be reversed unless such discretion has been grossly abused, i. e., where the order of proof was harmful or prejudicial. United States v. Manton, supra, 107 F.2d at page 844; United States v. Montgomery, supra, 126 F.2d at page 153; cf. United States v. Riccardi, supra, 174 F.2d at page 890; 6 Wigmore, 3d Ed., § 1873, p. 517; Henry Pennsylvania Trial Evidence, 3d Ed., § 488, p. 765.

 Was defendant's 1946 return admissible to negative intent and wilfulness? The return per se was hearsay and incompetent. Obviously the attempt to go into it on the government's side was not cross examination but a matter of defense. There was no competent evidence offered to prove its correctness. Assuming there was such evidence it involved a collateral matter and was not admissible on the question of intent or wilfulness.

 It was defendant's duty to file a return and pay his tax without any prior assessment or demand. United States v. Commerford, 2 Cir., 1933, 64 F.2d 28, at page 30, certiorari denied 289 U.S. 759, 53 S.Ct. 792, 77 L.Ed. 1502; Guzik v. United States, 7 Cir., 1932, 54 F.2d 618, at page 619, certiorari denied 285 U.S. 545, 52 S.Ct. 395, 76 L.Ed. 937; Vol. 10, Mertens Federal Income Taxation, § 55.36; Levy v. United States, 3 Cir., 1921, 271 F. 942, 943. The crime denounced by § 145(b) is complete when the taxpayer wilfully and knowingly files a false and fraudulent return with intent to defeat or evade any part of the tax due the United States. United States v. Croessant, supra, 178 F.2d at page 98; Cave v. United States, supra, 159 F.2d at page 467; Myres v. United States, supra, 174 F.2d at page 334. An attempt to evade income taxes is a separate offense for each year. United States v. Sullivan, 2 Cir., 1938, 98 F.2d 79, at page 80; United States v. Johnson, 7 Cir., 123 F. 2d 111, at page 119, reversed on other grounds in United States v. Johnson, 319 U.S. 503, 63 S.Ct. 1233, 87 L.Ed. 1546; Vol. 10 Mertens Op. Cit. supra, § 55.33, p. 70.

 Defendant complained that as a result of Tross restoring an item to sales on January 1, 1946, he made him overpay his 1946 taxes by $60,000. The entry was made in the customary way only to bring the account into balance preliminary to what would likely happen later in the year. Defendant plead complete ignorance of what had occurred. There was no basis for any claim that in making the entry or the overpayment there was any intention to repay the government any taxes of which it had previously been defrauded. Intent is a state of mind difficult of precise proof.[44] See Shreve v. United States,

---

43. United States v. Klass, supra, 166 F. 2d at page 377; Johnson v. United States, supra, 318 U.S. at page 195, 63 S.Ct. at page 552; United States v. Bradley, 3 Cir., 1945, 152 F.2d 425, 426; Emmich v. United States. 6 Cir., 298 F. 5, 9, certiorari denied 266 U.S. 608, 45 S.Ct. 93, 69 L.Ed. 465.

44. Cf. Langford v. United States, supra, 178 F.2d at page 53 ("before and at the

supra, 103 F.2d at page 803; United Business Corporation of America v. Commissioner, 2 Cir., 1933, 62 F.2d 754, 755, and see United States v. Brand, 2 Cir., 1935, 79 F.2d 605, 606.

For such instances of conduct there can be no general test of relevancy. Ordinary experience usually suffices to tell whether the inference is a possible one and whether the evidence is admissible. Such judicial rulings as have been made are seldom of use as precedents. See Wigmore, § 266, p. 88, § 302, p. 200–201; O'Brien v. United States, 7 Cir., 1931, 51 F.2d 193 at page 195; United States v. McCormick, 2 Cir., 1933, 67 F.2d 867, at page 868; United States v. Sullivan, supra, 98 F.2d 80. Cf. Heindel v. United States, 6 Cir., 1945, 150 F.2d 493, at pages 497, 498, and cases cited.

Here notwithstanding our rulings that under the circumstances what happened in 1946 was immaterial to this inquiry, defendant volunteered on cross examination a statement as to making a $60,000 overpayment in 1946.

When the defendant sought affirmatively to go into the matter of overpayment, it was in our judgment of no probative value as to what defendant's intent was in 1943, 1944 and 1945. Even assuming there was an overpayment on which year did it apply? There would still be a substantial balance due in each of the years in question.[45]

Defendant moved for a mistrial because of statements by the witness Tross (10). In his additional reasons 17A, B, D, E, F, the same matter is incorporated in his complaint as to the conduct of the trial judge.

Tross' first employer was Stoehr & Fister. Starting as a stenographer and later promoted to office manager, he worked for defendant's father and later the defendant for a total of thirty-three years. Over the years he appeared to develop an exaggerated sense of loyalty to his employer to the point that he testified he would do anything he requested. From the moment Griffiths demanded the 1946 balance sheet he apparently became frightened and somewhat emotional. As a witness he was placed in the position of revealing the misconduct of himself and the defendant. Both sides had difficulty in extracting details as to exactly what occurred at the meeting in Griffiths' office. He cried on several occasions.[46] On direct and redirect (202 pages) and on cross and re-cross examination (288 pages) however he testified as to what occurred during the years involved. During the course of his cross examination several incidents occurred during which he volunteered certain statements. Each incident is accurately portrayed in the record. On each occasion the trial judge gave the necessary admonitions and cautionary instructions. We were meticulously careful that the truth might be developed in accordance with the accepted principles and standards appropriate for criminal trials in federal court, at all times seeing to it that the defendant was accorded his substantial rights and that the trial was conducted in a fair and impartial manner.

When read in the light of the entire record and in their proper context, no one of the statements made by the witness or all of them together warranted granting of defendant's motions for mistrial based thereon.

As to the trial judge:

Placed in their proper context, the lack of merit in defendant's complaints will be amply demonstrated.[47] See Gariepy v.

---

time"), with Kulp v. United States, 3 Cir., 1914, 210 F. 249, at page 251; United States v. Johnson, supra, 129 F. 2d at page 960; Lisansky v. United States, 4 Cir., 1929, 31 F.2d 846, at page 851, 67 A.L.R. 67; as to the variance cf. Wigmore, § 302, p. 200, § 1732, p. 98 et seq., and Haigler v. United States, 10 Cir., 1949, 172 F.2d 986.

45. Defendant's reasons 12, 16B, J, M, N, F, L.

46. See remarks of defense counsel in regard thereto, R. pp. 118, 120, 223, 304, 309, 397, 476; as to the witness, see R. pp. 211, 302, 303, 344, 387.

47. (17A) R. p. 108, 397, 403, 404, 424–426, 435; pp. 434–438; cf. defendant's statements R. p. 1607, 1611, 543; see 15D, the question had already been answered several times; (17B) R. p. 675, 677; (17D) R. p. 1067–1069; (17E) R. p. 1412–1414; (17F) R. p. 1500;

United States, 6 Cir., 1951, 189 F.2d 459, at page 464. Tross testified that without his working papers then in defendant's possession he could not state the amount of taxes defendant wanted to pay in 1943, 1944 and 1945, or identify restored items. Defense counsel handed the witness a large "batch of papers",[48] apparently not in their regular order See United States v. Michener, supra, 152 F.2d at page 885. Included were defendant's private copies, papers of Stoehr & Fister, of the three corporations and of defendant's business from 1939 to 1946. Upon the court's insistence they were marked and identified as defendant's Exhibits 3 to 23 inclusive. The witness, asked by defense counsel to examine and describe each paper, was in the act of doing so (see R. p. 290–291) when defense counsel inadvertently or otherwise prodded him with a "Go ahead". The witness asked not to be hurried; the court advised he would not be. The net result was that Tross testified that the papers contained the true and false income for each year but that the amount of taxes as such was never reduced to writing.

On two occasions defense counsel while asking a question of a witness turned and looked toward defendant who sat facing the jury. As the question was asked defendant shook his head indicating thereby that the event in question had occurred and in the manner stated. On the first occasion (17A, R. p. 431–432) without mentioning the defendant, the court instructed the jury that they take only the testimony in court under oath. At sidebar defense counsel denied any intention of doing anything wrong. The incident again occurred at R. p. 555–556. The court asked that it be not repeated. At sidebar, defense counsel agreed that the incident occurred, denied responsibility for it and made assurances that it would not happen again. See p. 11 supra, and May v. United States, supra, 175 F.2d at page 1010.

At R. p. 438–440 (17A) inquiry was made as to a collateral matter. Cf. R. p. 264–265. See U. S. v. Manton, U. S. v. Klass, supra.

Throughout the entire trial the trial judge conscientiously endeavored to carry out the teachings and the precepts of the cases heretofore outlined, advising the jurors that they were the sole judges of the facts. See charge of the court at p. 13.

 In the foregoing there was no error, but if there was the ruling in Shields v. United States, 3 Cir., 1927, 17 F.2d 66, at page 69 is appropriate: " 'a defendant in a criminal case cannot complain of error which he himself has invited.' " And cf. United States v. Chiarella, supra, 184 F.2d at page 908; United States v. Rutkin, supra, 189 F.2d 431, at page 440 and cases cited.

 We see no error (15F) in permitting defendant to be questioned and to state that he always thought Griffiths had a high reputation for integrity.

 In August 1948 defendant made an offer in compromise, (26 U.S.C.A. § 3761,) contingent upon a complete release of all liability, civil and criminal. The offer was unequivocally rejected on behalf of the Attorney General. Defense counsel sought to show the details thereof to negative intent and wilfulness, and as tending to explain defendant's delay in paying his taxes (R. p. 1514, et seq., and see p. 1633, et seq). Objections thereto were sustained. (7, 8, 16P). See discussion and cases cited, supra, pp. 22–23; Wigmore, § 1061, pp. 28, 31, 35; United States v. Lustig, 2 Cir., 1947, 163 F.2d 85, certiorari denied 332 U.S. 775, 68 S.Ct. 88, 92 L.Ed. 360, rehearing denied 332 U.S. 812, 68 S.Ct. 106, 92 L.Ed. 390.

[58–60] There was obviously no attempt on defendant's part over the years to make a voluntary disclosure. Defense counsel sought to introduce evidence as to the Treasury Department's policy in regard

---

(17F) R. p. 1501–1503; (17D) R. p. 1108. See cases cited Note 34, supra.

**48.** In order to properly evaluate the incidents occurring at R. p. 290, 291 and R. p. 306–311, they must be placed in their proper setting. As to the former,

see R. p. 231; see court's question at 279; statement of counsel at p. 280, R. p. 302, 303, and generally from 279 to 312. As to the latter, see R. p. 260–271. Cf. court's remark at R. p. 308 with instruction to the jury at p. 30.

thereto (R. pp. 1151, 1179, 1182, 1690); to cross examine Griffiths as to his knowledge thereof, and as to why, after he had been deceived by the defendant, he did not advise him as to such policy and afford him an opportunity to make a voluntary disclosure before he reported the matter to the Internal Revenue Department.[49] Did defendant already know the policy? Would he make a voluntary disclosure? Would he disclose that he had committed fraud? Would the Commissioner, notwithstanding, recommend prosecution? In the absence of a statute the right to immunity is only an equitable one. See United States v. Levy, supra, 153 F.2d at page 997, and see opinions of Attorneys General, Vol. 38 (1934–1937) p. 94; Mertens Op. Cit. supra, § 55.32, footnote 88. Defendant did not file an amended return or pay his taxes up to the time of trial. The answers to these questions are pure speculation; they presented collateral matters. See Ferreira v. Wilson Borough, 344 Pa. 567, 570–573, 26 A.2d 342. The answers thereto would not in our judgment in any way impeach the credibility of Griffiths, nor were the questions competent to show bias on his part. For these reasons they were excluded (5, 6) and we declined to include any reference thereto in our charge (14.49, 52).

■ The penalties imposed by Congress to enforce the tax laws embrace both civil and criminal sanctions. Invocation of one does not exclude resort to another. Helvering v. Mitchell, 303 U.S. 391, at page 399, 58 S.Ct. 630, 82 L.Ed. 917; Spies v. United States, supra, 317 U.S. at page 495, 63 S.Ct. at page 366.

■ After the filing date defendant could not escape criminal responsibility merely by paying the additional tax. See Oliver v. United States, 7 Cir., 1931, 54 F.2d 48, 49; United States v. McCormick, supra, 67 F.2d at page 868; Mertens, § 55.38; United States v. La Fontaine, D.C.Md.1931, 54 F.2d 371; Burr v. United States, 7 Cir., 86 F.2d 502, 504, certiorari denied 300 U.S.

664, 57 S.Ct. 507, 81 L.Ed. 872; United States v. Sabourin, 2 Cir., 1947, 157 F.2d 820, 821; Slick v. United States, 7 Cir., 1924, 1 F.2d 897; cf. Heindel v. United States, supra, 150 F.2d at page 497, cases cited therein, Haigler v. United States, supra, 172 F.2d at page 987 and companion cases cited, supra, footnote 44; and O'Brien v. U. S., and U. S. v. Sullivan, supra, and see Wilson v. United States, 232 U.S. 563, at pages 570, 571, 34 S.Ct. 347, 58 L.Ed. 728.

In view of the foregoing, point 14.44 was refused.

We declined to charge point 14.48 as stated. We did however cover the subject matter thereof in the charge given.

■ In our charge at p. 14 we explained the distinction between civil and criminal sanctions, quoting verbatim from Spies v. United States, supra, 317 U.S. at page 495, 63 S.Ct. at page 366, and see R. p. 1630, 1631, and for that reason refused to include points 14.19 and 14.24. In addition, the latter contained matter of which there was no evidence in the record. Had we given it as requested we would have been charged with committing substantial error.

■ The material parts of point 14.51 were included in the general charge. We did give the orthodox charge as to accomplice testimony. That part of the point taken from United States v. Kelley, 2 Cir., 1939, 105 F.2d 912, at page 917, was refused. What the purpose of Congress was in passing the law was not material. Tross could likewise be charged with violating § 145(b). Tinkoff v. United States, supra, 86 F.2d at page 876.

■ (19A) Defendant quotes a phrase out of context in our charge on reasonable doubt: "an actual, sincere mental hesitation caused either by insufficient or unsatisfactory evidence". The observations in Wigmore, § 2497, p. 321, are pungently pertinent. The precise words were used in United States v. Greene, D.C.S.D.Ga.1906, 146 F. 803, at page 824, affirmed 5 Cir., 154 F. 401, certiorari de-

---

49. Himmelfarb v. United States, supra, 175 F.2d at page 939. "Privileged communications are not recognized as between a client and his accountant." And see United States v. Hiss, 2 Cir., 1950, 185 F.2d 822, at page 832.

nied 207 U.S. 596, 28 S.Ct. 261, 52 L.Ed. 357. The trial judge rules whether the evidence is sufficient to go to the jury. If it is they then solely determine whether it is sufficient to convince them. Wigmore, § 2549, p. 499; Dell'Aira v. United States, 9 Cir., 1926, 10 F.2d 102, at page 106. Included in our definition was the test introduced into the law by Starkie in his Treatise on Evidence, and contained in the charge of Chief Justice Shaw in Com. v. Webster, 5 Cush., Mass., 295, at page 320: "An abiding conviction to a moral certainty."

"We do not believe it to be the law that a trial judge must make this a matter of ritual and use the precise words found in a decision either in Pennsylvania or elsewhere." Goodrich J. in United States v. Schireson, 3 Cir., 1941, 116 F.2d 881, at page 883, 132 A.L.R. 1157.

Defendant attempts to read into the charge something not there, citing as a precedent a case long since overruled, and espousing a doctrine rejected by the Third Circuit.[50]

19B is devoid of merit; likewise as to 19C. See charge of the court at pp. 7, 8, 16, and see Stillman v. U. S.; U. S. v. Hornstein; Paschen v. U. S., supra. The distinction between direct and circumstantial evidence was made merely for the purpose of giving the orthodox charge on circumstantial evidence. See United States v. Dolasco, 3 Cir., 1950, 184 F.2d 746, at page 748.

■ Direct evidence may be that of an "eye" witness as, e. g., Tross and Griffiths, or documentary in character as e. g., books, ledger cards, income tax returns. United States v. Greene, supra, 146 F. at page 824; Underhill Op. Cit. supra, p. 5; cf. Wigmore, § 24, p. 397.

■ "Evidence is often called direct evidence when, if it be true, it immediately establishes the fact to be proved by it; and indirect when it establishes immediately collateral facts from which the main fact may be inferred." Webster's New International Dictionary, 2d Ed., Unabridged.

■ "The basic distinction between direct and circumstantial evidence is that in the former instance the witnesses testify directly of their own knowledge as to the main facts to be proved, while in the latter case proof is given of facts and circumstances from which the jury may infer other connected facts which reasonably follow, according to the common experience of mankind." 20 Am.Jur., Evidence, § 270, p. 258. "Measured by the above rule there is evidence of both kinds in the case, each of which, in all probability, had considerable weight with the jury. However, even with the aid of such a concise statement, it is not always easy to lay one item of evidence on one side of the distinguishing line and another item on the other side of the line. Much evidence, which, with its recital, would be classed as direct evidence, upon closer observation turns out to be circumstantial in character. * * * Any rule for the special treatment of evidence upon the basis of its character, direct or circumstantial, is bound to be difficult of correct application." McCoy v. United States, 9 Cir., 1948, 169 F.2d 776, at page 784.

■ In proving net income, the books were direct evidence; as to wilfulness, knowledge or intent and the ultimate issue of guilt or innocence, they were circumstantial evidence. See charge at p. 11.

As to 19D, see charge pp. 1, 2, 10, 11, 12, 13 and 14. As to p. 12, see Tinkoff v. United States, supra, 86 F.2d at page 880;

---

50. See cases discussed in United States v. Farina, 2 Cir., 1950, 184 F.2d 18, at page 21, certiorari denied 340 U.S. 875, 71 S.Ct. 121, 95 L.Ed. 636; and see Gray v. United States, 3 Cir., 1920, 266 F. 355, 356–357; Kulp v. United States, 3 Cir., 1914, 210 F. 249; Thompson v. United States, 3 Cir., 1922, 283 F. 895; Berkowitz v. United States, 3 Cir., 1925, 5 F.2d 967; Murphy v. United States, 3 Cir., 1929, 33 F.2d 896; Blatt v. United States, 3 Cir., 1932, 60 F.2d 481; United States v. Sussman, D.C.E.D.Pa., 37 F. Supp. 294, at page 296; United States v. Crescent-Kelvan Co., supra, 164 F.2d at pages 588, 589, and see Underhills Criminal Evidence, 4th Ed., § 27, pp. 29, 30; United States v. Newton, D.C.S.D.Iowa 1892, 52 F. 275, at page 290.

as to p. 13, Cooper v. United States, supra, 9 F.2d at page 222; Paschen v. United States, supra, 70 F.2d at page 499. Knowledge means a state of being aware, promulgate to publish. Our statement meant no more than that the defendant signed the return and that it was his return. Cf. Lurding v. United States, 6 Cir., 1950, 179 F.2d 419, at page 421. Defendant admitted knowing that he was obliged to pay taxes on net income, that he signed his return, believed it to be true, caused the return to be filed, and that he read the first page thereof. The extent of his knowledge then and at all times herein involved was left to the sole determination of the jury. In this connection see comment of defense counsel at p. 18 of the charge.

19E is without merit. See charge as a whole and cf. instructions pp. 6, 9 and 14 with United States v. Croessant, supra, 178 F.2d at page 98; United States v. Augustine, supra, 189 F.2d at page 589; Spies v. United States, supra, 317 U.S. at pages 498, 499, 63 S.Ct. at pages 367, 368, and United States v. Croessant, D.C.E.D.Pa. 1949, 84 F.Supp. 514.

19F is devoid of merit.

19G is without merit. The defendant stated he had given almost one hundred per cent of his time to his business since 1939. As to the charge given, see Mertens Op. Cit. supra, § 47.32 and pocket supp.

At the conclusion of our charge we made inquiry as to whether there were any specific exceptions or requests for additional instructions. There were no exceptions. At sidebar the only request made by defense counsel was that we include in effect defendant's points 19 and 24, which request was denied. See U. S. v. Rutkin and Johnson v. U. S., and Langford v. U. S., all supra, and see Lawson v. United States, 1949, 85 U.S.App.D.C. 167, 176 F.2d 49, at page 53; United States v. Levy, supra, 153 F.2d 995, at page 998.

▮ What was said in Johnson v. United States, supra, 318 U.S. at page 202, 63 S.Ct. at page 555, is likewise applicable to a trial judge reviewing the record on a motion for a new trial: "In reviewing criminal cases, it is particularly important

* * * to re-live the whole trial imaginatively and not to extract from episodes in isolation abstract questions of evidence and procedure."

Reading the testimony and the charge as an integrated whole, (Boyd v. United States, 1926, 271 U.S. 104, 107–108, 46 S.Ct. 442, 70 L.Ed. 857; United States v. Berg, 3 Cir., 1944, 144 F.2d 173, at page 177,) the record leaves no doubt that the case was fairly tried, submitted to the jury in a clear, impartial and thorough charge on both the facts and the law. Defendant's motion for a new trial will therefore be denied in an order filed herewith.